**Guadalupe HERRERA and Adolfo Cruz in their individual capacities and as Administrators of the Estate of David Herrera, Plaintiffs,**

v.

**LAS VEGAS METROPOLITAN PO-LICE DEPARTMENT, a political sub-division of the State of Nevada; City of Las Vegas, a political subdivision of the State of Nevada; Sheriff Jerry Keller, individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department, Offi-cers Alfred Woodruff, Won Cho, Eric Heindel, and Sean Malia, individually and in their official capacities as po-lice officers employed by the Las Ve-gas Metropolitan Police Department, County of Clark, State of Nevada;**

**Sergeant Juanita Goode, individually and in her official capacity as ser-geant employed by the Las Vegas Met-ropolitan Police Department, County of Clark, State of Nevada, John Does 1 through XX, inclusive, Defendants.**

No. CV–S–01–0826–LRH–PAL.

United States District Court, D. Nevada.

Jan. 20, 2004.

Daniel Polsenberg, Ike Epstein, Beckley Singleton, Chtd., Las Vegas, NV, Mario Valencia, Mario D. Valencia, Law Office, Henderson, NV, Robert Ackley, Pro Hac Vice Firm, Law Offices of Herbert Hafif, Los Angeles, CA, Trenier Wright, Larry Sackey, Hafif Law Firm, Claremont, CA, for Plaintiffs.

Walter Cannon, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, for Defendants.

## ORDER

HICKS, District Judge.

Before the Court is Defendants' Motion for Summary Judgment (Docket No. 35), filed June 3, 2003. Plaintiffs filed an opposition (Docket No. 38), to which Defendants subsequently replied (Docket No. 39). For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The facts surrounding this case are largely in dispute. In considering Defendants' motion for summary judgment, this Court will view the facts in the light most favorable to the non-moving party. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir.1990). Therefore, this Court assumes, without finding, the truth of those facts alleged by Plaintiffs which are supported by the record. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir.2000); *Doe v. Tenet* 329 F.3d 1135, 1138 (9th Cir.2003).

On January 17, 2002, Decedent David Herrera ("Herrera" or "Decedent") experienced an episode of severe mental illness and delusion while staying with his mother in her home in Las Vegas, Nevada. Frightened by her son's behavior, Plaintiff Guadalupe Herrera contacted a social worker who had previously worked with the Decedent, requesting help. In response, licensed social workers Maurice Silva ("Silva") and James Rayner ("Rayner") arrived at the residence at about 12:00 p.m. When they attempted to approach Herrera within the residence, they saw that he was extremely agitated and that he held a small paring knife at his side. At this point, Silva, Rayner, and the Decedent's mother withdrew from the residence. Silva and Rayner determined that Herrera needed immediate hospitalization and the police were contacted to assist in transporting Herrera to a hospital.

Shortly thereafter, Metro officers Won Cho, Malia, Heindel, Woodruff, and Sergeant Juanita Goode arrived on the scene. The officers were advised of the Decedent's mental health condition. They were also told that Herrera did not have access to any firearms and that he was alone inside the house. Plaintiffs allege that Silva also told the officers that Herrera was more of a threat to himself than to anyone else; that Herrera had no history of hurting others; and that he had not been taking his medication. Before the events which ultimately led to Herrera's death, the five officers briefly discussed possible alternates to getting Herrera into custody so he could be transported to a hospital. At that point, the officers decided to approach Herrera with "the Devastator," a can of pepper spray the size of a fire extinguisher, and a "low lethality shotgun," a gun that shoots bean bag pellets.

The Decedent's mother had given the officers a key to her house, but when they attempted to unlock the door, Herrera continued to re-lock it. After kicking in

the door, the officers saw that Herrera held a knife. They backed away and stood in a semi-circle in the front of the house. Plaintiffs allege that the officers were from ten to fifteen feet away from the Decedent, and that the Decedent was not moving toward the officers, when officer Woodruff then fired a bean bag round from the shotgun, striking the Decedent's chest. Herrera was shot three more times with the same shotgun before he finally buckled at the knees, but he did not fall completely to the ground. While he was struggling to rise, officers Heindel and Cho approached the Decedent and attempted unsuccessfully to knock the knife from his hand with their batons. Plaintiffs allege that Sergeant Goode then shot Herrera in the eyes with pepper spray from ten feet away, although Herrera was not moving toward the officers.

Throughout this interaction, the officers had been yelling repeatedly for Herrera to "drop the knife." Yet despite all of their attempts to dislodge the weapon from Herrera's hand, he continued to hold the knife. Defendants assert that at this point, Herrera held the knife up to his ear like an ice pick, screamed that the officers would have to kill him, and began to move toward them. However, Plaintiffs allege that this did not occur. Rather, a one-minute impasse followed Sergeant Goode's use of the pepper spray, in which Herrera remained standing in the doorway, stunned, the knife pointed skyward, and did not move toward the officers. Officer Woodruff then shot Herrera several times with his service revolver until he fell to the ground. The officers requested the paramedics, which had previously arrived, come forward and provide emergency treatment to Herrera, but they were unable to save him.

Subsequently, the Decedent's parents (collectively, "Plaintiffs") brought § 1983 claims against the five Metro officers and Sheriff Keller, in their official and individual capacities; the Las Vegas Metropolitan Police Department; and the City of Las Vegas. They also brought a claim against the five Metro officers pursuant to § 1985. The Complaint further asserts state law claims for wrongful death, intentional infliction of emotional distress, negligence, and negligent training and supervision against the various Defendants. In the motion presently before the Court, Defendants contend that several of Plaintiffs' claims should not survive summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment if the pleadings and supporting documents, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact ...." See *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir.1990); *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986). The purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Id.* A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

## DISCUSSION

In their motion, Defendants argue that summary judgment should be granted for

the following reasons: First, with regard to Plaintiff's § 1983 claim, Defendants assert that the officers are not liable in either their individual or official capacity. Next, Defendants contend that Plaintiffs cannot establish a claim under 42 U.S.C. § 1985 for unlawful conspiracy to violate the Decedent's constitutional rights. Defendants also raise several arguments regarding Plaintiffs' state law claims: (1) Plaintiffs cannot establish the elements necessary for the state law claim of intentional infliction of emotional distress; (2) the officers are immune from Plaintiffs' state law claims; and (3) the State law claims against Metro for negligent supervision and training are subject to discretionary immunity. Finally, Defendants assert that punitive damages against Metro and the officers should be excluded as a matter of law.

## I. § 1983 Claim

A plaintiff may bring suit under § 1983 to redress violations of "rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws" that occur under the color of state law. 42 U.S.C. § 1983. *Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir.2002). Plaintiffs' federal claim under § 1983 includes suits against the five Metro officers and against Sheriff Keller, in their official and individual capacities. The § 1983 claim also seeks to recover against Metro itself for an improper policy or custom.

### A. *Liability of officers in their individual capacity*

■ Liability can attach to an officer in his individual capacity if the plaintiff is able to establish: (1) that the official

caused the deprivation of the plaintiff's rights while acting personally under color of state law, and (2) that the official is not entitled to the protection of qualified immunity. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

■ First, as a matter of law, and on the basis of the evidence in favor of Plaintiff's position, a reasonable jury could conclude that the Decedent's constitutional rights were violated by some of the Defendants. In their opposition, Plaintiffs assert that the excessive force used against the Decedent violated his Fourth Amendment rights.[1] The Fourth Amendment guarantees a citizen's right to be free from "unreasonable searches and seizures." U.S. CONST. AMEND. IV. Apprehension by the use of deadly force is without question a seizure within the meaning of the Fourth Amendment, *see Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985), and is permitted only where "at a minimum, the suspect presents an immediate threat to the officer or others, or is fleeing and his escape will result in a serious threat of injury to persons." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir.1997). Moreover, there must be objective factors to justify the officer's concern that the suspect poses a threat—a simple statement by the officer is insufficient. Therefore, in determining whether the Decedent's Fourth Amendment rights were violated, the Court must consider whether the Defendant officers had probable cause to believe that the Decedent posed a significant

---

1. Plaintiffs do not address the Defendants' argument that there are no viable § 1983 claims under the 5th, 8th, or 14th Amendments. Pursuant to rule 7–2 of the Local Rules of Practice of the United States District Court for the District of Nevada, "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." Local Rule 7–2(d).

threat of death or serious physical injury to themselves or others, and used reasonable force to alleviate that threat. *Tennessee,* 471 U.S. at 3, 105 S.Ct. 1694; *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

▮ Initially, this Court notes that Officer Malia did not use any force against the decedent during this confrontation, and consequently cannot be said to have used unreasonable force. Furthermore, Officers Cho and Heindel's only acts of force against the Decedent were their attempts to knock the knife out of his hand with their batons after he had partially fallen over from the bean bag rounds. This Court concludes that such actions were reasonable attempts to neutralize the threat posed by the Decedent. Summary judgment will therefore be granted with regard to the § 1983 claims against these Defendants. Also, the Court will construe Plaintiff's silence on the issue of Sheriff Keller's personal liability as a concession under the local rules.[2] For that reason, and for good cause showing, summary judgment will be granted with regard to the suit against Sheriff Keller in his individual capacity.

▮ With regard to the actions of officers Goode and Woodruff, the factual disputes are considerable: The Metro officers insist that the Decedent posed a serious threat at the time he was shot with the bean bag rounds, sprayed with the pepper spray, and finally lethally shot. On the other hand, witnesses at the scene stated that the Decedent was not moving toward the officers when he was initially shot with

the bean bag rounds; was doubled-over with pain at the time the pepper spray was used; and was merely standing with the knife pointed skyward, stunned, for nearly a full minute before he was shot and killed. Though there is no dispute that the Decedent was armed with a knife throughout this police encounter, "the mere fact that a suspect possesses a weapon does not justify deadly force." *Haugen v. Brosseau,* 339 F.3d 857, 862 (9th Cir.2003). *See, also Curnow v. Ridgecrest Police,* 952 F.2d 321, 324–25 (9th Cir.1991) (holding that deadly force was unreasonable where the suspect possessed a gun but was not pointing it at the officers and was not facing the officers when they shot). Rather, whether the amount of force used was reasonable requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Johnson v. County of Los Angeles,* 340 F.3d 787, 792 (9th Cir.2003) (citing *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Notably, the nature and quality of the intrusion on Herrera's Fourth Amendment rights was death by gunfire at relatively close range, and at the hands of individuals who had been called upon to help him.[3] As explained in *Johnson,*

> On the other side of the scale, the "countervailing governmental interests" are measured by such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

**2.** "The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." Local Rule 7–2(d).

**3.** In comparison, in a case where the officer's force was not found to be unreasonable, the

Court noted that " " 'on the intrusion of his Fourth Amendment Rights' " side of the scale, [the plaintiff] does not allege anything more violent than hard pulling and twisting". *Johnson v. County of Los Angeles,* 340 F.3d 787, 792 (9th Cir.2003).

*Id.* (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). First, it is clear that Herrera was not approached by police due to any criminal activity. With regard to the other factors, the evidence, when viewed in the light most favorable to the Plaintiffs, suggests that there was no considerable threat to the officers' safety and that Herrera's resistance was due entirely to his delusional state rather than any reasoned recalcitrance on his part. Moreover, Herrera was in his family home and there is no evidence of exigent circumstances warranting the haste with which the Metro officers pursued this situation. The Ninth Circuit has emphasized that:

> The problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense. In the former instance, increasing the use of force may, in some circumstances at least, exacerbate the situation. . . . Even when an emotionally disturbed individual is "acting out" and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual. [Therefore,] where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under *Graham,* the reasonableness of the force employed.

*Deorle v. Rutherford,* 272 F.3d 1272, 1282–83 (9th Cir.2001). At the time of his interaction with the police, Herrera was in a severely emotional mental state. This was clear to the officers not only from the information they received upon their arrival, but also during the course of their interaction with Herrera. Yet, the officers took a confrontive approach with Herrera and did not retreat or reconsider that approach, even when it was clear that Herrera was becoming more agitated. In light of the disputed facts, and the fact that this confrontation resulted in the death of an individual whom Metro officers were aware was mentally incompetent, this Court cannot rule out liability on the part of Goode and Woodruff for any improper action or supervision during the confrontation. The question of whether the officers used force that was objectively reasonable under the totality of the circumstances is properly left to the jury. *Santos v. Gates,* 287 F.3d 846, 855 (9th Cir.2002).

 Having concluded that a reasonable jury could find that the action complained of constituted a violation of the Decedent's constitutional rights, this Court must next determine whether qualified immunity shields the Defendants from liability. Qualified immunity generally protects government officials so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baker v. Racansky,* 887 F.2d 183, 186 (9th Cir.1989). However, a reasonable officer would be aware that the use of extreme and deadly force is only reasonable and permissible when the officer perceives a threat of danger to himself or others. Consequently, it would be premature to determine the officials' qualified immunity status at this time, because whether the officers may be said to have acted reasonably will depend on the jury's resolution of the disputed facts. *Santos,* 287 F.3d at 855, n. 12. Where there is an issue of fact that requires a trial to resolve the parties' differing versions of the truth, summary judgment is not appropriate. *Sec. & Exch.*

*Comm'n v. Seaboard Corp.,* 677 F.2d 1289, 1293 (9th Cir.1982).

### B. Liability of officers in their official capacity

A municipal entity can be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). When sued in their official capacity, local government officials are liable under § 1983 "in those cases which ... a local government would be suable in its own name." *Id.* at n. 55, 98 S.Ct. 2018. Therefore, the Court considers simultaneously the motions for summary judgment on actions brought against the Metro officers in their official capacity and the action brought against the Las Vegas Metropolitan Police Department and the City of Las Vegas.

In order to withstand summary judgment in a 42 U.S.C. § 1983 claim against a municipal entity, a plaintiff must offer enough evidence to create a genuine issue of material fact as to both the existence of a constitutional violation, and municipal responsibility for that violation. *See Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). One way a plaintiff may demonstrate municipal liability for a constitutional violation is by showing that the violation occurred as a result of inadequate training on the part of the municipality. *See City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). It is upon this basis that Plaintiffs assert their § 1983 claim against the municipal entity and the officers in their official capacity.

In order to establish a claim under § 1983 due to inadequate training, the Plaintiffs must provide evidence from which a reasonable jury could find that there was an inadequate training program, and that the Defendant was deliberately indifferent to whether its officers received adequate training. There must also be actual causation between the inadequate training and the deprivation of the Plaintiff's rights. *Merritt v. County of Los Angeles,* 875 F.2d 765, 770 (9th Cir.1989). Defendants argue that summary judgment should be entered on this claim because a single incident cannot yield liability under an inadequate training theory, and because policy-making officials were not deliberately indifferent to the Plaintiff's rights. Though it is true that "[m]ere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability," *id.* at 770, that is not to say that Plaintiffs must establish other constitutional violations before liability can attach for this violation. *See generally City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197. *See also Buchanan v. Humboldt County,* 1999 WL 355077, *10 (N.D.Cal.1999) (noting that liability for failure to train deriving from a single incident is not foreclosed by *City of Canton* ). Rather, Plaintiffs must present actual evidence of inadequate training. This Court concludes that the evidence provided by Plaintiff, indicating that the police were inadequately trained in dealing with the mentally ill and in using impact projectiles, is sufficient to survive summary judgment. Plaintiffs' expert, retired Captain Van Blaircom ("Van Blaircom"), who is a former Chief of Police for the city of Bellevue, Washington, testified that the Defendant officers should have known that the manner in which they approached the Decedent would escalate the confrontation. According to Van Blaircom, the officers' treatment of the situation, combined with their statements that a mentally ill individual should be

treated as any other person, regardless of the situation, indicate that the police department's training dealing with the mentally ill falls well below the reasonable standard of contemporary care. Further, Plaintiffs provide evidence through Van Blaircom's testimony that the police department's expert on training and the use of impact projectiles was himself unknowledgeable about the use of these low-lethality weapons; and that the way impact projectiles were used at the scene evidences lack of training.

 The question of whether an entity exhibited deliberate indifference to a plaintiff's constitutional rights is generally a matter for the jury. *See Davis v. Mason County*, 927 F.2d 1473, 1482 (9th Cir.1991) and *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001). Though there is no direct evidence of deliberate indifference, sometimes the violation itself is "a highly predictable consequence of the failure to train and thereby justif[ies] a finding of 'deliberate indifference.'" *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398, 117 S.Ct. 1382, 1385, 137 L.Ed.2d 626 (1997). In *City of Canton*, the Supreme Court noted:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

489 U.S. at 390, 109 S.Ct. 1197. Defendants have presented evidence of Metro's training policies and practices pertaining to the use of lethal and nonlethal force as well as when dealing with the mentally ill. However, in light of Plaintiffs' evidence concerning deficient training of the Metro officers and their supervisors, and given the fact that the officers' encounter with the mentally incompetent Herrera resulted in his death, the question of deliberate indifference cannot be resolved until after the presentation of evidence on this issue at trial. The Court further concludes that Plaintiffs have presented sufficient evidence to establish a question of fact as to whether inadequate training was the cause of Herrera's death. Consequently, summary judgment is not warranted with regard to Plaintiffs' claims against the municipality and its entities.

## II. § 1985 Claim

 Plaintiffs' complaint alleges a claim against Defendants for conspiring to violate the civil rights of the Decedent, in violation of 42 U.S.C. § 1985. However, a claim brought under § 1985 requires a showing of:

> (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a right or privilege of a United States citizen.

*Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1181 (9th Cir.1998). Defendants contend that summary judgment is appropriate as the Decedent was not deprived of the equal protection of the laws. Plaintiffs concede this point by virtue of their failure to respond to it, and the Court has not found any evidence in the record tending to show an equal protection violation. Therefore, having shown good cause, summary judgment is granted as to Plaintiffs' § 1985 claim.

## III. State Law Claims

Plaintiffs assert against the various Defendants state law claims for wrongful death, intentional infliction of emotional distress, negligence, and negligent training

and supervision. With regard to these claims, Defense argues that the Defendants are granted immunity from these claims by statute.

### A. *Immunity of officers from state law claims*

 Defendants argue that the Metro officers are immune from Plaintiffs' state law causes of action based on Nevada Revised Statute 41.032. Notwithstanding Plaintiffs' failure to address this issue, the Court considers the relevant law in making its disposition:

> [N]o action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is: based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved was abused.

Nev.Rev.Stat. § 41.032. A "discretionary act" requires personal deliberation, decision, and judgment. *See Maturi v. Las Vegas Metro. Police Dept.,* 110 Nev. 307, 308, 871 P.2d 932, 933 (1994); *Parker v. Mineral County,* 102 Nev. 593, 729 P.2d 491 (1986) (stating that the decision of how to respond to a report is discretionary and should not be "second guessed" by a court with the benefit of hindsight). In *Ortega v. Reyna,* the Nevada Supreme Court con-cluded that a state trooper's decisions to stop an appellant, and later to take the appellant to jail, were discretionary because those decisions required the officer to use his personal judgment. 114 Nev. 55, 62, 953 P.2d 18, 23 (1998).[4] Similarly, the handling of such a precarious situation as approaching an armed and mentally delusional individual required the officers to continually assess the changing situation and improvise as they proceeded. "[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (explaining the appropriateness of granting qualified immunity to officers under the Fourth Amendment for reasonable, even if excessive, force.) Defendants' strategy for approaching the Decedent, the moment by moment decisions they made throughout the interaction, and their ultimate use of lethal force against Herrera were, as a matter of law, discretionary acts. Therefore, the officers are immune from suit based on state law claims.

### B. *Immunity of Metro from claims for negligent supervision and training*

 Defendants also claim that Nevada Revised Statute 41.032 bars Plaintiffs' state law claims against Metro based on negligent training and supervision. However, a wealth of case law on this subject causes this Court to conclude that Metro

---

4. *See also Michenfelder v. City of Torrance,* 28 Cal.App.3d 202, 104 Cal.Rptr. 501 (1972) (holding that the decision of a police officer to preserve public safety and order through use of commands backed by threat of force or actual use of physical force is a matter of discretion). The *Michenfelder* court also criticizes the plaintiff's reliance upon a difference between discretionary and ministerial acts, explaining that the "fallacy of their argument is their assumption that once a city has decided to employ police and send them to the scene of an occurrence, the action of the officers there is ministerial. As we have pointed out above, the officers were obliged to exercise their own discretion after they had observed what was happening and had listened to the explanation of the persons present." *Id.* at 207, 104 Cal.Rptr. 501.

assumes the obligation to ensure that its employees do not pose an unreasonable safety risk to those with whom they come into contact. *See, e.g., Doe v. Estes,* 926 F.Supp. 979, 983 (D.Nev.1996) (finding that, although the hiring of a teacher is a discretionary decision, a school district assumes the post-hiring obligation to use due care to ensure that the teacher does not impose an unreasonable safety risk to his or her students).[5] Therefore, the training and supervision of officers is not a "discretionary function," but rather an "operational function" for which Metro does not enjoy immunity under the statute. *Id.* Consequently, summary judgment will not be granted as to Plaintiffs' state law claims against Metro.

## IV. Punitive Damages

### A. Metro's liability for punitive damages

■■ The Supreme Court has ruled that § 1983 plaintiffs may not recover punitive damages against a municipality because a municipality is unable to form the necessary intent required for punitive damages; and because punitive damages against a municipality serves to punish taxpayers. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267–68, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981). Summary judgment is granted in favor of Metro with regard to its liability for punitive damages.

### B. Metro officers' liability for punitive damages for State law claims

■■ Having previously concluded that the Metro officers are immune from suit under state law claims, this Court need not address the issue of liability for punitive damages. Nonetheless, Nevada Revised Statute 41.035[6] would preclude such damages even were the officers not immune from suit. *See also Clements v. Airport Authority of Washoe County,* 69 F.3d 321, 336–37 (9th Cir.1995).

### C. Metro officers' liability for punitive damages for Federal claims

■■ Finally, the Defense argues that Metro officers cannot be liable for punitive damages pursuant to a § 1983 claim because they did not, as a matter of law, possess the requisite degree of culpability to be liable for such damages. However, in *Smith v. Wade,* the Supreme Court held that a jury may assess punitive damages if a "defendant's conduct ... involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). A finding of "willful or malicious conduct" is not a necessary prerequisite to punitive liability. *Wright v. Jones,* 907 F.2d 848, 852 (8th Cir.1990). Given the significant factual disputes in this case, this Court concludes that it cannot, at this time, preclude the remedy of punitive damages as they may apply to Defendants Goode and Woodruff. The appropriateness of such a remedy must be

---

**5.** *See also Harrigan v. City of Reno,* 86 Nev. 678, 680, 475 P.2d 94 (1970) ("Once having decided to construct a parking lot the city was obligated to use due care to make certain that the parking lot met the standard of reasonable safety for those who would use it. Such was the operational stage for which the statute does not exempt the city from liability if due care has not been used and an injury is caused.") and *State v. Silva,* 86 Nev. 911, 914, 478 P.2d 591 (1970) ("Although the selection

of inmates for honor camp service may be primarily a discretionary act, the manner in which the camp is supervised and controlled is mainly operational in nature.").

**6.** The statute precludes punitive damages in tort actions against an officer or employee of any political subdivision, or against a political subdivision, for acts or omissions arising out of the scope of public duties.

determined after the presentation of all the evidence at trial.

## CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion for Summary Judgment (Docket No. 35) is GRANTED IN PART AND DENIED IN PART, as follows:

It is ORDERED that summary judgment will be GRANTED with regard to Plaintiffs' § 1983 suits against Metro officers Malia, Cho, and Heindel in their individual capacities, as well as Sheriff Keller in his individual capacity;

It is further ORDERED that summary judgment is GRANTED in favor of all Defendants with regard to Plaintiffs' § 1985 claim;

It is further ORDERED that summary judgment is GRANTED in favor of the Las Vegas Metropolitan Police Department and the City of Las Vegas with regard to Plaintiffs' claim for punitive damages;

It is further ORDERED that summary judgment is GRANTED in favor of the Metro officers with regard to Plaintiffs' state law claims against them;

In all other respects, Defendants' Motion for Summary Judgment is DENIED, and Plaintiffs will be permitted to pursue their remaining claims and remedies.