JAMES JACOB JORDAN, Appellant, *v.* THE STATE OF NEVADA on Relation of the DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, CAPITOL POLICE DIVISION, JIMMIE JONES, Respondents.

No. 38189

JOHN LUCKETT, Appellant, *v.* EDWARD DOUMANI and LA CONCHA MOTEL, Respondents.

No. 39052

April 14, 2005

110 P.3d 30

[Rehearing denied June 6, 2005]

*James Jacob Jordan,* Lynnwood, Washington, in Proper Person.

*John Luckett,* Anaheim, California, in Proper Person.

*Brian Sandoval,* Attorney General, Carson City, for Respondents State of Nevada and Jimmie Jones.

*Law Offices of Michael F. Bohn, Ltd.,* and *Michael F. Bohn,* Las Vegas, for Respondents Edward Doumani and La Concha Motel.

46

## OPINION

*Per Curiam:*

In addition to challenging district court dispositions, these proper person appeals involve first impression issues regarding orders that place permanent restrictions on the ability of proper person litigants with in forma pauperis status to access the Nevada state courts. As both appeals raise similar questions of substantial importance, we considered them together. We conclude that the district court has authority to limit the court access of a litigant proceeding in proper person with in forma pauperis status when certain guidelines, designed to protect important constitutional rights, are followed.

### *FACTS AND PROCEDURAL HISTORIES*

*Docket No. 38189 (Jordan)*

On a Sunday afternoon, respondent Capitol Police Officer Jimmie W. Jones arrested proper person appellant James Jacob Jordan outside of the Nevada Supreme Court building for trespassing on state property in violation of NRS 207.200(1)(b), which prohibits people from willfully remaining on land after having been warned not to trespass. According to Officer Jones' arrest report, he and a Carson City Sheriff's Deputy were investigating complaints of a suspicious person when they located Jordan sitting on a bench within the building's grounds. Determining that Jordan matched the description of the person for whom they were looking, Officer Jones then identified himself, questioned Jordan's reason for being on state property, and told him to return on Monday if he had business with the State. After asking for identification, Officer Jones told Jordan that he was trespassing on state property and requested that he leave. Jordan refused and Officer Jones informed him that he would be arrested if he did not leave. Jordan again refused to move and was consequently arrested and booked at the Carson City Sheriff's Department's jail on one count of trespass.

The next morning, a justice of the peace reviewed the arrest and found probable cause to hold Jordan for trial. However, Jordan was apparently released the next day, and the trespass charge was dropped.

Jordan, in proper person, subsequently sued respondents Officer Jones and the Capitol Police Division of the Nevada State Department of Motor Vehicles and Public Safety (collectively, the State)

for (1) oppression while using physical force, (2) malicious prosecution, (3) false imprisonment, (4) false lawsuit, (5) libel, and (6) perjury. To his complaint, Jordan attached copies of the arrest report and criminal complaint, the declaration of probable cause arrest form, and the Nevada criminal statutes from which he purported to derive his claims. Jordan was granted leave to proceed in forma pauperis.

Jordan then obtained and submitted a letter from the State Buildings and Grounds Division administrator, stating that the supreme court building's grounds are continuously open to the public. During the suit's pendency, Jordan also filed numerous other papers, including various motions, requests for rulings and other actions. The purposes behind many of these papers are difficult to decipher or understand, and the papers are in many instances procedurally improper.

The district court issued an order reciting its difficulties in comprehending and responding to Jordan's filings and declaring that Jordan should not be allowed to abuse his proper person status to file "meritless ramblings." Further, the court found that another of Jordan's complaints was so long and incomprehensible as to be incapable of legal resolution. Consequently, the court restricted Jordan's court access, ordering that Jordan will "not be allowed to proceed in 'pro per' with a waiver of fees" in "any new actions," and that Jordan must obtain leave of the court before filing any new action.

A few months later, a joint case conference report, apparently typed by Jordan but signed by both parties, was filed. The joint report acknowledges that Jordan's complaint essentially alleged that he was unjustly arrested and that Officer Jones lied about the alleged unjust arrest in the police report. The State then moved for summary judgment, which the district court granted based solely on its inability to decipher the meaning of Jordan's claims. Jordan timely appealed.

### Docket No. 39052 (Luckett)

Proper person appellant John Luckett, a California resident, met "M.L.," an alleged con artist, during a trip to Las Vegas. Luckett alleged that M.L. made him multiple promises, including that he would give Luckett tickets to various casinos' shows and make a bet for him based on a "hot tip" that M.L. had received. Luckett then handed M.L. money to wager with. Luckett apparently never saw or heard from M.L. again.

According to Luckett, M.L. also introduced him to respondent Edward Doumani, owner of respondent the La Concha Motel, so that Doumani could counsel Luckett on a legal matter. Luckett al-

leged that Doumani falsely asserted his status as a practicing California lawyer and gave him legal advice in connection with a different Nevada case that Luckett was involved in. Moreover, Luckett asserted that Doumani allowed M.L. to live at the motel rent-free, despite being aware of M.L.'s alleged criminal record and having received many complaints from people whom M.L. had defrauded. Luckett asserted that the La Concha Motel serves as a front for M.L.'s scams, from which Doumani and the La Concha Motel are profiting.

Luckett filed a complaint in the district court, in proper person, against M.L.,[1] Doumani, and the La Concha Motel. In it, he asserted that Doumani had a duty to warn him of M.L.'s tendencies to scam and, since Doumani did not warn him, that both Doumani and the La Concha Motel are responsible for M.L.'s injurious acts. The complaint asserted claims against Doumani and the La Concha Motel for the unlawful practice of law, negligence, conspiracy to commit and aid a fraud, and intentional infliction of emotional distress. In a district court order that expressly allowed him to proceed "without payment or fees or security therefor," Luckett was granted in forma pauperis status.

Doumani and the La Concha Motel then served Luckett with a demand for security for costs under NRS 18.130, which requires an out-of-state plaintiff to post security for any future adverse award of costs and charges. They later moved to dismiss the action based on Luckett's failure to post the requested security. The court orally advised Luckett that he had thirty days in which to post a security bond, or the case would be dismissed. Thereafter, Doumani and the La Concha Motel again moved to dismiss for Luckett's failure to post security costs and also moved to dismiss for his failure to state a claim. They did not, however, seek at that point to set aside the in forma pauperis order waiving security requirements.

The court conducted a hearing on the pending motions. During the hearing, the court notified Luckett of its intent to grant the dismissal motions. The court also indicated its intent to issue a restrictive order declaring Luckett a vexatious litigant. Luckett was granted three weeks in which to file an opposition and to provide the court with information as to any lawsuits he had filed in Nevada and California within the past five years. The next hearing was scheduled for December 20, 2001.

Luckett responded by filing two motions explaining his involvement in other cases and pointing out the previous district court order granting him in forma pauperis status and waiving security

---

[1]M.L. was never properly served and never appeared in the district court proceedings, and he is not a party to this appeal.

requirements. However, Luckett did not attend the December 20 hearing,[2] and the district court subsequently entered a written order declaring Luckett a vexatious litigant and restricting his court access. In it, the court noted that Luckett was previously declared a vexatious litigant in California[3] and that Luckett had filed at least five cases in the Eighth Judicial District Court, each with in forma pauperis status. Further, the court stated that he had repeatedly filed unmeritorious and often contradictory pleadings and papers in each of those cases, including several documents in which he simply deleted an original caption and inserted a new one in its place. Finally, the court noted that Luckett frequently referred to his ability to travel and gamble. Accordingly, the court declared that Luckett is not indigent, that he is a vexatious litigant, and that he may not file any new litigation in Nevada state courts in forma pauperis without first obtaining leave of the presiding judge of the court. In addition, the court directed Luckett to notify the Eighth Judicial District Court of any new litigation that he files in Nevada. Finally, the court admonished that any violation of the order could result in contempt of court punishable by fine or imprisonment.

A few days later, the district court entered a written order granting Doumani's and the La Concha Motel's motions to dismiss for failure to post security for costs. Thereafter, the district court entered an amended restrictive order. The amended order is almost identical to the original order; however, it additionally prohibits Luckett from proceeding in his action against Doumani and the La Concha Motel without paying appropriate costs. Luckett timely appealed.

## DISCUSSION

Nevada has long recognized the importance of maintaining direct access to its state courts.[4] Accordingly, Nevada Supreme Court Rule 44 generally allows for self-representation in all lower courts, and NRS 12.015 permits an indigent person to proceed in forma pauperis, without the payment of court costs and fees.[5] Such rules and statutes help to ensure that every person in Nevada is afforded

---

[2]Luckett asserts that he attempted to attend the hearing but was initially unable to locate the correct courtroom and then locked out of the room.

[3]*See In re Luckett,* 283 Cal. Rptr. 312 (Ct. App. 1991).

[4]*See, e.g., Sullivan v. District Court,* 111 Nev. 1367, 904 P.2d 1039 (1995) (recognizing citizens', whether or not indigent, constitutional right to access to the courts with the protection of due process of law); *Hollis v. State,* 95 Nev. 664, 601 P.2d 62 (1979) (recognizing prisoners' court access rights).

[5]*See also Wilkie v. State,* 98 Nev. 192, 194, 644 P.2d 508, 509 (1982) (recognizing that a prisoner's "right to represent himself is guaranteed by the United States Constitution").

meaningful access to the courts, regardless of that person's financial status. At the same time, however, notions of unlimited free court access have led to a plethora of frivolous litigation: the threat of monetary sanctions or professional discipline is ineffective to deter abusive litigation practices when those practices are carried out by proper person litigants proceeding in forma pauperis.[6]

As a result, this court has recognized that a litigant's right to access the courts in proper person and with in forma pauperis status is not without limits.[7] Like courts in other jurisdictions that deal with an overabundance of frivolous or abusive proper person and in forma pauperis litigation, Nevada courts have available multiple methods of reducing misuse of the legal system. Pre-service complaint review and restriction of court access constitute two methods of particular pertinence in the instant cases.

### Pre-service review of complaints with in forma pauperis status

In Nevada, a district court is authorized under NRCP 11(c)(2) to impose sanctions "sufficient to deter repetition" of a party's conduct in frivolously or vexatiously pursuing an action or defense, even when that party is proceeding in proper person. As perhaps one of the most extreme NRCP 11 sanctions, the court may sua sponte dismiss a completely unwarranted action or claim in order to prevent an in forma pauperis litigant from continuing in a course of completely baseless litigation or harassment.[8] Of course, a party against whom an NRCP 11 sanction is proposed must first be afforded notice and an opportunity to oppose the sanction's imposition.[9]

Other jurisdictions similarly permit a complaint to be dismissed if, upon holding "an abbreviated evidentiary hearing" before service of process to determine whether an accompanying application for in forma pauperis status should be granted, the court deter-

---

[6]*See Barnes v. District Court,* 103 Nev. 679, 683, 748 P.2d 483, 486 (1987) (noting that "plaintiffs who are allowed to proceed in forma pauperis are not affected by economic deterrents to filing frivolous lawsuits").

[7]*Id.*; *see also Wilkie,* 98 Nev. 192, 644 P.2d 508 (concluding that, under the circumstances, a prisoner's confinement without access to an adequate law library did not violate his constitutional right of self-representation).

[8]*See* NRCP 11(c)(1)(B); *Trustees v. Developers Surety,* 120 Nev. 56, 63, 84 P.3d 59, 63 (2004) (recognizing the legislative intent to "'deter frivolous or vexatious claims and defenses[, which] overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public,'" through the courts' imposition of sanctions under Rule 11 (quoting S.B. 250, 72d Leg. (Nev. 2003); 2003 Nev. Stat., ch. 508, § 153, at 3478)); *see also Blanks v. State,* 594 So. 2d 25, 28 (Miss. 1992), *abrogated in part by Bilbo v. Thigpen,* 647 So. 2d 678 (Miss. 1994).

[9]*See* NRCP 11(c)(1)(A), (B).

mines that the applicant is not indigent or that the action is frivolous.[10] These courts have followed the United States Court of Appeals for the Fifth Circuit's lead in *Spears v. McCotter.*[11] In *Spears,* the court recognized that preliminary evidentiary hearings regarding the specificity of a trial court complaint and accompanying application to proceed in forma pauperis may be held in order to "dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the . . . claims occurred, as well as the legal basis for the claim."[12] The court concluded that if, at the hearing, the complaint is determined frivolous, the action may be dismissed under the federal in forma pauperis statute.[13]

Although we generally approve of the *Spears* approach, we do not adopt it completely. Unlike the federal statute, Nevada's in forma pauperis statute, NRS 12.015, does not authorize the district court to review a complaint (or a petition) for frivolity when considering a litigant's application to proceed without paying court fees and costs.[14] Accordingly, upon receiving a complaint and an application to proceed in forma pauperis, the district court must first consider the application's merits and determine whether the accompanying affidavit and any additional investigation[15] demonstrate that the applicant is unable to pay the costs of proceeding with the action. If the court so finds, the court must grant the applicant leave to proceed without the payment of costs and file the complaint.

Nevertheless, once the complaint is filed, the court is free to review the complaint's merits for apparent defects. If the complaint

---

[10]*Blanks,* 594 So. 2d at 27; *see also Brown v. Diaz,* 361 S.E.2d 490 (Ga. Ct. App. 1987) (dismissing an in forma pauperis inmate's complaint for frivolity after holding a preliminary hearing); *Evans v. Green,* 391 S.E.2d 11 (Ga. Ct. App. 1990) (same, at least when prisoner complaints alleging violations of federal law are involved).

[11]766 F.2d 179 (5th Cir. 1985), *abrogated in part by Neitzke v. Williams,* 490 U.S. 319, 323 (1989), *modified in part by statute as recognized in Christiansen v. Clarke,* 147 F.3d 655 (8th Cir. 1998).

[12]*Id.* at 180.

[13]*Id.*; 28 U.S.C. § 1915(e)(2).

[14]*Compare* NRS 12.015, *with* 28 U.S.C. § 1915(e)(2), Del. Code Ann. tit. 10, § 8803(b) (1999), Ga. Code Ann. § 9-15-2(d) (1993), Neb. Rev. Stat. § 25-2301 (1995), *and* 42 Pa. Cons. Stat. Ann. § 240(j) (West 2002).

[15]*See Sullivan v. District Court,* 111 Nev. 1367, 1371, 904 P.2d 1039, 1042 (1995) ("If, on subsequent review of the application, the district court determines that petitioner has not shown he is indigent, the district court may order petitioner to provide further information or may deny the application in an appropriately filed written order.").

appears completely frivolous on its face, meaning that it appears to lack "an arguable basis either in law or in fact,"[16] then the court may direct the clerk to defer issuing the summons(es) pending the completion of its review. The court may then hold a preliminary evidentiary hearing with the litigant to determine whether the action should be allowed to proceed. If the district court determines that the action or a specific claim is indeed frivolous, the court can dismiss the action or claim, as the case may be, in accordance with NRCP 11.[17] We emphasize that, although this procedure is constitutionally permissible,[18] the dismissal of a complaint based on information obtained in a *Spears*-type hearing is an extreme action, and if the complaint can be amended to cure any apparent defects, the litigant should be permitted to do so. This pre-service review process will not only "spare prospective defendants the inconvenience and expense of answering" frivolous or incoherent complaints,[19] but will also assist the court in deciphering the litigant's basic allegations and aid the litigant in presenting a more legally viable complaint, if possible.

*Court-access restrictions*

Unlike some states, Nevada does not have a court rule or statute authorizing a court to declare an individual a "vexatious litigant" and to limit accordingly that individual's access to the courts.[20]

---

[16]*Neitzke,* 490 U.S. at 325. This definition comports with our explanation in *Bergmann v. Boyce,* 109 Nev. 670, 676, 856 P.2d 560, 564 (1993). In *Bergmann,* we defined a "frivolous" claim under NRCP 11, when made by attorneys, as one that is " 'both baseless and made without a reasonable and competent inquiry.' " *Id.* (quoting *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990)). We noted that the "baseless" prong requires examination of whether "the pleading is 'well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.' " *Id.* The second prong of the *Bergmann* definition, "whether the attorney made a reasonable and competent inquiry," is inapplicable to nonattorney litigants proceeding in proper person. *Id.* We note that the NRCP 11 frivolous standard is different from the standard pertaining to dismissals under NRCP 12(b)(5) for failure to state a claim. *Id.* at 676-77, 856 P.2d at 564; *see also Neitzke,* 490 U.S. at 326-28.

[17]*See* NRCP 11(c)(2), (3).

[18]*See Christiansen v. Clarke,* 147 F.3d 655, 657-58 (8th Cir. 1998); *accord Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir. 2001); *see also Coppedge v. United States,* 369 U.S. 438 (1962); Stephen M. Feldman, *Indigents in the Federal Courts: The In Forma Pauperis Statute—Equality and Frivolity,* 54 Fordham L. Rev. 413, 432-36 (1985).

[19]*Neitzke,* 490 U.S. at 324.

[20]*See, e.g.,* Cal. Civ. Proc. Code §§ 391-391.7 (West 2004); Del. Code Ann. tit. 10, § 8803(e) (1999); Fla. Stat. Ann. § 68.093 (West Supp. 2005); Haw. Rev. Stat. Ann. § 634J (Michie 1993); Tex. Civ. Prac. & Rem. Code Ann. § 11.051 (Vernon 2002).

Nonetheless, Nevada's courts are constitutionally authorized to issue all writs "proper and necessary to the complete exercise of their jurisdiction."[21] In addition, as discussed above, NRCP 11 permits a district court to impose appropriate deterrent sanctions on a party who violates that rule by signing court documents that are frivolous or presented for an improper purpose. Finally, Nevada courts also possess inherent powers of equity and of control over the exercise of their jurisdiction.[22] We recognize that these authorities bestow upon Nevada courts the power to permanently restrict a litigant's right to access the courts.[23]

---

[21]Nev. Const. art. 6, § 6(1); *see also id.* § 4.

[22]*See Matter of Hartford Textile Corp.,* 681 F.2d 895, 897 (2d Cir. 1982) ("The equity power of a court to give injunctive relief against vexatious litigation is an ancient one . . . .").

[23]*See De Long v. Hennessey,* 912 F.2d 1144 (9th Cir. 1990) (recognizing that the federal courts' inherent power to regulate abusive litigation activities includes enjoining a litigant's right to access the courts under the All Writs Act, 28 U.S.C. § 1651); *accord Hartford Textile,* 681 F.2d at 897; *see People v. Dunlap,* 623 P.2d 408, 410-11 (Colo. 1981) (noting that the administration of justice for other litigants is hampered when frivolous lawsuits create unwarranted taxpayer expenses and interfere with the court's functioning by increasing court costs, crowding dockets, and causing delay, disruption, and confusion and basing its power to issue restrictive orders, in part, on state constitutional clauses granting the Colorado Supreme Court superintending control over inferior courts and the power to issue writs); *In re Lawsuits of Carter,* 510 S.E.2d 91 (Ga. Ct. App. 1998) (recognizing a trial court's authority to issue "vexatious litigant" orders restricting proper person litigants' court access); *Eismann v. Miller,* 619 P.2d 1145, 1149-50 (Idaho 1980) (recognizing that, although "every individual in our society has a right of access to the courts[,] . . . the exercise of that right cannot be allowed to rise to the level of abuse, impeding the normal and essential functioning of the judicial process," and basing the Idaho Supreme Court's fundamental power to order restrictive orders on state constitutional clauses granting the court supervisory powers over the judicial system); *Hooker v. Sundquist,* 150 S.W.3d 406 (Tenn. Ct. App. 2004) (upholding a trial court's imposition of temporary prefiling restrictions based on a Tennessee rule substantially similar to NRCP 11); *Minniecheske v. Griesbach,* 468 N.W.2d 760 (Wis. Ct. App. 1991) (noting that frivolous claims and appeals statutes would be ineffective against an indigent proper person litigant and basing its decision to uphold the trial court's restrictive order on federal law, taxpayers' rights, and the public's interest in maintaining the judicial system's integrity); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991) (discussing the "control necessarily vested in courts" to "police" themselves and administer the judicial process in an orderly and effective manner, in a case involving a court's sua sponte imposition of sanctions (internal quotations omitted)); *Howard v. Sharpe,* 470 S.E.2d 678 (Ga. 1996) (noting a problematic prisoner litigant's right to meaningful court access, but upholding a habeas court's order enjoining him from filing suits in forma pauperis without prior approval); *Town of Brookline v. Goldstein,* 447 N.E.2d 641, 645 n.6 (Mass. 1983) (recognizing that a preliminary injunction prohibiting certain future legal actions might be appropriate if it could be shown that the party is unable to pay sanctions or is otherwise undeterred).

A court may impose such restrictions either after a party so moves, or, in appropriate circumstances, sua sponte.[24] Nonetheless, because restrictive orders implicate an individual's constitutional right to access the courts, such orders must be narrowly tailored.[25] Further, we note a general reluctance to impose restrictive orders when standard remedies like sanctions are available and adequate to address the abusive litigation.[26]

We have not previously addressed what approach courts should take when imposing vexatious litigant restrictive orders. The Ninth Circuit, however, has developed a four-factor analysis to guide courts in balancing the various interests implicated by court-access restrictions.[27]

First, the litigant must be provided reasonable notice of and an opportunity to oppose a restrictive order's issuance. This requirement protects the litigant's due process rights.[28]

Second, the district court must create an adequate record for review, including a list of all the cases and documents, or an explanation of the reasons, that led it to conclude that a restrictive order was needed to curb repetitive or abusive activities.[29] In regard to this factor, we recognize that the district court's access to documents filed and proceedings taken in other courts is often lim-

[24]*See* NRCP 11(c)(1); *In re Oliver,* 682 F.2d 443, 445-46 n.5 (3d Cir. 1982); *Pavilonis v. King,* 626 F.2d 1075, 1079 (1st Cir. 1980) ("Generally, this kind of order should not be considered absent a request by the harassed defendants.").

[25]*Chambers,* 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); *Moy v. U.S.,* 906 F.2d 467, 470 (9th Cir. 1990) ("[A]n injunction . . . restrict[ing] an individual's access to the court system . . . is an extraordinary remedy that should be narrowly tailored and rarely used."); *accord De Long,* 912 F.2d at 1147; *Pavilonis,* 626 F.2d at 1079 ("We expect that injunctions against litigants will remain very much the exception to the general rule of free access to the courts."); *Hooper v. Harris,* 512 S.E.2d 312, 315 (Ga. Ct. App. 1999) (recognizing that order restricting an inmate's right to access the courts must be "clearly warranted by the particular circumstances"); *Minniecheske,* 468 N.W.2d at 762.

[26]*See, e.g., Goldstein,* 447 N.E.2d at 645 n.6.

[27]*De Long,* 912 F.2d at 1147-48; *see also Morgan Cty. Com'rs Bd. v. Winslow,* 862 P.2d 921, 924 (Colo. 1993) ("'[A] litigant's right of access to the courts must be balanced against and, in a proper case, must yield to the interests of other litigants and of the public in general in protecting judicial resources from the deleterious impact of repetitious, baseless *pro se* litigation.'" (quoting *Bd. of County Com'rs v. Winslow,* 706 P.2d 792, 794 (Colo. 1985))).

[28]*De Long,* 912 F.2d at 1147; *see also* NRCP 11(c).

[29]*De Long,* 912 F.2d at 1147.

ited. Moreover, filings that have not been deemed frivolous or vexatious or otherwise resolved remain pending on the merits before the court to which they are assigned. Therefore, a court considering a restrictive order must use caution in reviewing filings in other cases, so as not to interfere with other judges' pending assignments.[30] The judge issuing the restrictive order should rely only on observations obtained from cases to which he or she is assigned, and on actual rulings in other cases.[31] Further, while a restrictive order may be warranted based solely on documents before the court in that particular case, the district court must identify those documents and explain how, by filing them, the litigant abused the court system.[32]

Third, the district court must make " 'substantive findings as to the frivolous or harassing nature of the litigant's actions.' "[33] Thus, the restrictive order "cannot issue merely upon a showing of litigiousness."[34] The litigant's filings must not only be repetitive or abusive, but also be without an arguable factual or legal basis, or filed with the intent to harass.[35]

Finally, the order must be narrowly drawn to address the specific problem encountered.[36] We note that when a litigant's misuse of the

---

[30]*See, e.g.,* DCR 18(2) ("No judge except a judge of the district where the cause or proceeding is pending shall . . . do any act or thing required to be done in any cause or proceeding unless [certain requirements are met]."); *Rohlfing v. District Court,* 106 Nev. 902, 803 P.2d 659 (1990) (recognizing that, generally, a district judge has no authority to review another judge's order).

[31]*See generally* Cal. Civ. Proc. Code § 391(b) (West 2004) (describing frivolous litigation sufficient to warrant a restrictive order as, among other things, the final determination, adverse to the litigant, of five out of seven proceedings within the past seven years; litigation unjustifiably permitted to remain pending for two years; proceedings repeatedly brought to re-litigate previous determinations or previously determined claims; the repeated proper person filing of unmeritorious papers within a proceeding; and actions based upon circumstances substantially similar to those upon which another jurisdiction has based a vexatious litigant determination); *accord* Haw. Rev. Stat. Ann. § 634J-1 (Michie 1993); Tex. Civ. Prac. & Rem. Code § 11.054 (Vernon 2002).

[32]For example, abuse could be found not only when the litigant violates NRCP 11, but also when the litigant persistently files documents that are unintelligible, redundant, immaterial, impertinent, or scandalous. *See* NRCP 12(f).

[33]*De Long,* 912 F.2d at 1148 (quoting *In re Powell,* 851 F.2d 427, 431 (D.C. Cir. 1988)).

[34]*Moy v. U.S.,* 906 F.2d 467, 470 (9th Cir. 1990).

[35]*See id.*; *De Long,* 912 F.2d at 1148 n.3.

[36]*De Long,* 912 F.2d at 1148.

legal system is pervasive, a restrictive order that broadly restricts a litigant from filing any new actions without permission from the court might nonetheless be narrowly drawn. However, even though courts may, as a general rule, restrict vexatious litigants' access, constitutional considerations prohibit a complete ban on filings by indigent proper person litigants if the ban prevents the litigant from proceeding in criminal cases and in original civil actions that sufficiently implicate a fundamental right; such orders are impermissible.[37] Since restrictive orders necessarily implicate future filings, which may involve criminal cases or fundamental rights, even broad restrictive orders should set an appropriate standard against which any future filings will be measured.[38] For example, depending on the specific problems encountered, a restrictive order might bar a litigant from filing any new actions involving a specific defendant or a specific claim, or it might bar a litigant from filing any new actions unless the court first determines that the proposed action is not frivolous or brought for an improper purpose and/or implicates a fundamental right.

As these guidelines adequately protect a litigant's constitutional rights, provide appropriate guidance to courts issuing vexatious litigant orders, and set forth suitable factors for review of such orders, we adopt the Ninth Circuit's four-part analysis, as modified, for Nevada courts issuing restrictive orders. On review, this court examines restrictive orders under an abuse of discretion standard.[39]

We now turn to the restrictive orders at issue in these appeals.

---

[37]*See, e.g., Sullivan v. District Court,* 111 Nev. 1367, 904 P.2d 1039 (1995); *Barnes v. District Court,* 103 Nev. 679, 683-84, 748 P.2d 483, 487 (1987); *Procup v. Strickland,* 792 F.2d 1069, 1072-73 n.6 (11th Cir. 1986) (listing several cases in which courts have vacated or modified orders broadly prohibiting a prisoner from obtaining meaningful access to the courts without paying court fees, including: *Abdullah v. Gatto,* 773 F.2d 487 (2d Cir. 1985); *Franklin v. Murphy,* 745 F.2d 1221 (9th Cir. 1984); *Carter v. United States,* 733 F.2d 735 (10th Cir. 1984) (noting also that such orders improperly disallow district courts from appropriately exercising their statutory discretion to grant in forma pauperis status); and *In re Green,* 669 F.2d 779 (D.C. Cir. 1981) (same)); *Ali v. Moore,* 984 S.W.2d 224 (Tenn. Ct. App. 1998) (holding that an order permanently barring the litigants from filing any new actions in proper person unconstitutionally violated their right to access the courts).

[38]*See, e.g., Howard v. Sharpe,* 470 S.E.2d 678 (Ga. 1996) (requiring the litigant to certify that the claims are novel); *Town of Brookline v. Goldstein,* 447 N.E.2d 641, 645 (Mass. 1983) (recognizing that an order restricting a litigant's right to file actions against the town without prior court approval failed to identify a standard against which any future pleadings would be recognized, *e.g.,* as having merit or being sufficiently plain and definite to warrant a response).

[39]*Minniecheske v. Griesbach,* 468 N.W.2d 760, 762 (Wis. Ct. App. 1991); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 55 (1991).

*Docket No. 38189 (Jordan)*

The restrictive order in Docket No. 38189 runs afoul of our guidelines for several reasons. First, although the district court's previous orders hinted at its displeasure with Jordan's improper filings, the court never expressly warned Jordan that it was considering issuing a restrictive order affecting his right to access the court. While much of Jordan's conduct in the district court was inappropriate, the sua sponte order, entered without first providing Jordan with notice or an opportunity to respond, violated Jordan's due process rights.[40]

Second, although the order appears to include at least a partial explanation of the reason for its issuance, *i.e.,* that Jordan repeatedly wasted the State's resources with meritless and unintelligible filings that do not conform with court rules, in that case and others, and includes two examples of such filings, the order does not otherwise contain a list of the filings and rulings that led the court to impose its broad filing restriction. Moreover, the order does not sufficiently indicate that Jordan had previously instituted other suits that were determined meritless or otherwise resulted in an adverse resolution.[41] In this instance, it is unclear from the order whether the district judge based his explanation on observations obtained in cases to which he was assigned, on rulings in other cases, or elsewhere.

Third, the court made no substantive findings as to the frivolous or harassing nature of Jordan's actions. Even though the record indicates that many of Jordan's filings were difficult to understand and often procedurally improper, Jordan's allegations were not without arguable merit. Given the district court's difficulties in comprehending Jordan's complaint, this matter was particularly suitable for a *Spears*-type hearing. Such a preliminary hearing could have helped to prevent, at the outset, the ensuing confusion presented by Jordan's filings.

Finally, and perhaps most importantly, the restrictive order fails to set any standard against which a future court-access determina-

---

[40]*See In re Oliver,* 682 F.2d 443 (3d Cir. 1982) (vacating a restrictive order because the litigant was not provided an opportunity to oppose its issuance).

[41]*See Speleos v. McCarthy,* 201 B.R. 325 (D.D.C. 1996) (vacating a restrictive order for which no evidence supported a finding that the litigant had repeatedly filed frivolous suits).

tion should be made. Indeed, the order contains an apparent blanket prohibition on the filing of any new actions in forma pauperis, despite Jordan's indigence, and regardless of whether the future action involves a fundamental right. Accordingly, the order is unconstitutionally overbroad.[42] For the above reasons, we conclude that the district court abused its discretion when it issued the order restricting Jordan's access to state courts.

### Docket No. 39052 (Luckett)

In contrast, the restrictive order in Docket No. 39052, declaring Luckett a vexatious litigant, prohibiting him from filing any new litigation in Nevada state courts in forma pauperis without first obtaining leave of the presiding judge of the court, and requiring him to notify the Eighth Judicial District Court of any new litigation he files in Nevada, is less problematic. First, Luckett was warned of the court's intention to issue the order, and he was given three weeks in which to file an opposition. Further, a hearing was held regarding the matter before the order was filed, although Luckett did not attend. Accordingly, Luckett was provided with sufficient notice and opportunity to be heard.

Second, although the district court does not specifically identify the filings it found unmeritorious, repetitive, and contradictory, its findings are easily substantiated in the record. For instance, despite material allegations in his complaint that Doumani is not a California-licensed attorney, Luckett later claimed that Doumani is a California-licensed attorney. Also, Luckett repeatedly asserted the same losing arguments in motions to reconsider matters that had already been determined against him; the court's order pointed out that Luckett filed several documents in which he "simply delete[d] an original caption and insert[ed] a new one." Further, Luckett continually badgered opposing counsel in repeated filings and motions for sanctions, an inappropriate forum for many of his comments. He often continued to assert unmeritorious arguments even after the error in their legal analysis had been brought to his attention. And the record is replete with other examples. Further, as the district court recognized, the pattern of abusiveness can additionally be gleaned from the California published opinion that de-

---

[42]*See Sullivan v. District Court*, 111 Nev. 1367, 904 P.2d 1039 (1995); *Barnes v. District Court*, 103 Nev. 679, 683-84, 748 P.2d 483, 487 (1987); *see also Hooper v. Harris*, 512 S.E.2d 312 (Ga. Ct. App. 1999) (vacating for overbreadth a restrictive order that purported to declare all of an individual's filings "null and void").

clares Luckett a vexatious litigant. Accordingly, even though restrictive orders are often issued only after the instigation of an exorbitant number of meritless filings,[43] and even though such orders should make ample inventory of the observations and rulings on which the need for a restriction is based, Luckett's filings in the instant matter were both repetitive and abusive and provide a sufficient basis for restricting subsequent filings.[44]

We point out, however, that the court's finding regarding "motions, pleadings, and other papers" filed in the other district court cases does not support the vexatious litigant determination under these circumstances. In transcripts of the two hearings, the court mentioned that it had reviewed six suits previously instituted or attempted in the district court. However, these cases were ongoing at the time the court issued its restrictive order; the record does not include findings of frivolity or abuse made by the judges presiding over those cases, and it appears that those cases were assigned to other judges. Accordingly, those cases could not be used to support the restrictive order.

Third, the district court did make at least some substantive findings as to the frivolous nature of Luckett's filings in this case. Specifically, as noted above, the court found that Luckett filed numerous unmeritorious and contradictory documents, and documents in which he merely reasserted allegations under changed captions. Although the court could have made more substantive findings, the record demonstrates that Luckett repeatedly submitted meritless legally improper, and contradictory filings. In addition, those documents' repeated attacks on opposing counsel and the district judge demonstrate a pattern of intent to harass the defendants and the court.

---

[43]*See, e.g., In re Green,* 669 F.2d 779 (D.C. Cir. 1981) (noting between 600 and 700 repetitious complaints); *Morgan Cty. Com'rs Bd. v. Winslow,* 862 P.2d 921 (Colo. 1993) (noting 162 separate proceedings); *People v. Dunlap,* 623 P.2d 408 (Colo. 1981) (noting at least nine complaints filed against at least thirty-five state officials or their spouses); *Howard v. Sharpe,* 470 S.E.2d 678 (Ga. 1996) (noting over forty civil lawsuits); *Eismann v. Miller,* 619 P.2d 1145 (Idaho 1980) (noting over forty criminal and civil complaints, notices of lis pendens, and "common law liens").

[44]*Cf.* Tex. Civ. Prac. & Rem. Code § 11.054(1) (Vernon 2002) (permitting a vexatious litigant order to be entered if the litigant is unlikely to prevail and has instigated at least five suits within seven years that were lost, permitted to remain pending for two or more years, or determined to be frivolous or groundless); *Mehdipour v. State Dept. of Corrections,* 90 P.3d 546 (Okla. 2004) (upholding a statute barring prisoners from filing civil actions absent payment of the filing fee if at least three previously filed actions were dismissed on the grounds that the complaint was frivolous, malicious, or failed to state a claim, with certain exceptions).

Fourth, Luckett's misuse of the legal system is not confined to any particular person or process. Accordingly, the order is narrowly drawn to curb the widespread abuses noted by the district court. In particular, the order limits the possibility that Luckett will continue to file meritless suits, because it requires him to first obtain the presiding judge's permission. Nevertheless, an order broadly restricting future court filings must explicitly set a standard against which the presiding judge should measure potential new filings, for example, as having merit and/or potential impact on constitutional rights.[45] And because the authority to issue such an order is based on a court's inherent powers involving the ''exercise of its jurisdiction,'' the district court may not implicate other courts' powers by attempting to prevent Luckett from filing ''any new litigation in the courts of this state'' without permission. Accordingly, although the district court did not abuse its discretion when it declared Luckett a vexatious litigant and limited his court access accordingly, the order should be modified to include an appropriate standard and to apply only to the Eighth Judicial District Court.

*Final judgments*

*Docket No. 38189 (Jordan)*

The final judgment in Docket No. 38189 granted the State's motion for summary judgment on all of Jordan's claims. This court reviews orders granting summary judgment de novo.[46] Summary judgment is appropriate when, after an examination of the record, no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[47]

Preliminarily, we note that the district court's order, based on its inability to decipher Jordan's basic claims, was unwarranted. Jordan's complaint and other papers were typewritten and demonstrate an obvious attempt to organize and base his claims on legally rec-

---

[45]Although the original restrictive order did not specifically address the problems that the district court was encountering in the instant matter, it appears that the court had already decided to dismiss the case, and therefore likely did not expect the problems to continue. Further, the amended restrictive order appears to address this issue by requiring Luckett to pay appropriate costs before proceeding.

[46]*Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 713, 57 P.3d 82, 87 (2002).

[47]NRCP 56(c); *Pegasus,* 118 Nev. at 713, 57 P.3d at 87.

ognizable causes of action. He also attached to the complaint the statutes under which he purported to derive his causes of action. Moreover, the State was able, for the most part, to appropriately respond to Jordan's allegations. Accordingly, since the lack of clarity in Jordan's pleadings can be overcome without excessive difficulty, the court should not have granted summary judgment based on Jordan's claims being indecipherable.

Jordan was arrested for violating NRS 207.200(1)(b), which provides:

> 1.   Any person who, under circumstances not amounting to a burglary:
>
> . . . .
>
> (b) Willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass,
> is guilty of a misdemeanor.

In *Scott v. Justice's Court*,[48] a 1968 decision, this court considered whether a criminal complaint charging the petitioner with disturbing the peace and willfully remaining on hotel grounds after having been asked to leave by hotel employees was sufficient to try the petitioner for trespass under NRS 207.200(1)(b). After concluding that the statute makes punishable either entering or remaining, we noted that the petitioner was charged with trespassing upon "premises to which the public was invited."[49] Therefore, we stated, "a revocation of the general invitation would seem necessary before one could be considered a trespasser."[50] In this instance, Jordan submitted evidence indicating that the building's grounds were continuously open to the public, but the affidavits and papers documenting Jordan's arrest do not address why Officer Jones ordered Jordan off the building's public grounds. Officer Jones' report stated only that he advised Jordan that he was trespassing and asked him to leave. It did not reveal what Jordan was doing that would have authorized Officer Jones to exclude him from the property. Jordan therefore claims that his arrest was unlawful.

---

[48] 84 Nev. 9, 435 P.2d 747 (1968).

[49] *Id.* at 12, 435 P.2d at 749.

[50] *Id.* (citing *People v. Goduto*, 174 N.E.2d 385 (Ill. 1961); *State v. Carriker*, 214 N.E.2d 809 (Ohio Ct. App. 1964)). In *Scott*, the petitioner had been permanently barred from the premises because of prior misconduct and, at the time, was alleged to have been "using loud language." *Id.* at 10-11, 435 P.2d at 748. *Scott*, however, involved the revocation of a general invitation to enter on private land; we note that the standard for revoking a general invitation to be on private land may differ from the standard for revoking a general invitation to be on public land.

Jordan's complaint does allege some wrongs for which civil remedies might be available. Jordan's independent claims for libel, oppression while using physical force and perjury damages must fail;[51] however, his remaining claims for malicious prosecution and false imprisonment/false arrest ("false lawsuit") present genuine issues of material fact precluding summary judgment, as discussed below.

### Libel

In order to maintain a claim of libel, a plaintiff must show a false and defamatory statement, its unprivileged publication, fault, and damages.[52] " 'A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt.' "[53] Generally, whether a statement is defamatory is a question of law.[54] Only false statements of fact, as opposed to opinion, are actionable.[55]

Jordan's libel claim appears to arise from Officer Jones' statements on the declaration of probable cause arrest form that Jordan was uncooperative, had no business being there (on the building's grounds), and was arrested for trespass on state property. On appeal, the State notes that Officer Jones submitted his statements in a sworn affidavit averring that the stated events reflect what occurred at the time of Jordan's arrest. Further, the State argues that Jordan has provided no admissible evidence or argument demonstrating an issue as to the falseness of these statements.

We agree. Although Jordan repeatedly asserted to the district court that Officer Jones made false statements, he did not submit

---

[51]*See Droppleman v. Horsley,* 372 F.2d 249 (10th Cir. 1967) (recognizing that no independent civil conspiracy to commit perjury cause of action exists); *Hokanson v. Lichtor,* 626 P.2d 214, 218 (Kan. Ct. App. 1981) (recognizing that "the majority of authority from other jurisdictions holds that no civil cause of action for damages exists for . . . perjury"). In any case, Jordan's perjury allegations appear to be subsumed within his other causes of action.

[52]*Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 57 P.3d 82 (2002).

[53]*Lubin v. Kunin,* 117 Nev. 107, 111, 17 P.3d 422, 425 (2001) (quoting *K-Mart Corporation v. Washington,* 109 Nev. 1180, 1191, 866 P.2d 274, 281-82 (1993)).

[54]*See Miller v. Jones,* 114 Nev. 1291, 1296, 970 P.2d 571, 575 (1998).

[55]*Id.*

any other discernable account of relevant events, admissible or otherwise, demonstrating the falseness of the above statements. Further, the only statements that might be defamatory, that Jordan was uncooperative and was arrested, are mere opinion and admitted fact, respectively.[56] Therefore, the district court properly granted summary judgment on Jordan's libel claim.

### Oppression while using physical force

This claim was purportedly made under NRS 197.200, which makes it a criminal offense for an officer to unlawfully and maliciously, under pretense or color of official authority, commit oppression by arresting or detaining another against his will. The State correctly notes that NRS 197.200 does not create a civil cause of action.[57] Accordingly, the district court properly granted summary judgment on this claim.

### Malicious prosecution, false arrest,[58] and false imprisonment

Malicious prosecution consists of a prior criminal action being filed against the claimant, plus lack of probable cause to commence the prior action, malice, a favorable termination of the prior criminal action, and damages.[59] Proof of lack of probable cause may denote malice.[60]

As for false arrest, we have held that a claimant must show that the actor "instigated or effected an unlawful arrest."[61] Similarly, we have pointed out that false imprisonment arising from a false arrest occurs when the claimant's liberty is restrained " ' ' "under the probable imminence of force *without any legal cause or justi-*

---

[56]We note that statements made in good faith furtherance of one's official duties are generally privileged. *See Towne v. Cope,* 233 S.E.2d 624, 626-27 (N.C. Ct. App. 1977); 50 Am. Jur. 2d *Libel & Slander* § 276, at 545 (1995); *see also K-Mart Corporation v. Washington,* 109 Nev. 1180, 1191, 866 P.2d 274, 282 (1993); *cf. Sahara Gaming v. Culinary Workers,* 115 Nev. 212, 984 P.2d 164 (1999). Accordingly, Officer Jones' statements might constitute privileged communication.

[57]*See Collins v. Palczewski,* 841 F. Supp. 333, 340 (D. Nev. 1993).

[58]Presumably, by citing NRS 199.320, "false lawsuit," Jordan was alleging false arrest.

[59]*LaMantia v. Redisi,* 118 Nev. 27, 38 P.3d 877 (2002).

[60]*Chapman v. City of Reno,* 85 Nev. 365, 369, 455 P.2d 618, 620 (1969).

[61]*Nau v. Sellman,* 104 Nev. 248, 251, 757 P.2d 358, 360 (1988).

*fication.*' ' '[62] Thus, in *Hernandez v. City of Reno,*[63] we held that "an actor is subject to liability to another for false imprisonment 'if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it.' "

In response, the State primarily contends that Jordan is unable to show the existence of any issue of material fact as to lack of probable cause or legal justification for the arrest because the justice of the peace's probable cause determination, attached to Jordan's complaint, constitutes conclusive evidence of probable cause.[64] However, the justice of the peace's initial determination to hold Jordan for trial does not constitute irrebuttable evidence of probable cause to arrest.[65] In this case, Jordan has alleged that the finding was procured through perjury. Moreover, Officer Jones' affidavits do not answer material questions regarding his basis for believing that Jordan's refusal to leave constituted a crime. Thus, at this point, genuine issues of material fact exist as to whether the

---

[62]*Garton v. City of Reno,* 102 Nev. 313, 314-15, 720 P.2d 1227, 1228 (1986) (quoting *Marschall v. City of Carson,* 86 Nev. 107, 110, 464 P.2d 494, 497 (1970) (quoting *Hernandez v. City of Reno,* 97 Nev. 429, 433, 634 P.2d 668, 671 (1981))).

[63]97 Nev. at 433, 634 P.2d at 671 (quoting *Restatement (Second) of Torts* § 35 (1965)).

[64]The State also suggests that summary judgment on all claims was proper because Jordan failed to present any further evidence once the State moved for summary judgment, as required by NRCP 56(e). NRCP 56(e) permits a court, *when appropriate,* to enter summary judgment against an adverse party who fails to respond to such motion by going beyond the pleadings and supplying the court with documentation setting forth specific facts of a genuine triable issue. But Jordan did not rely merely on his pleadings. He attached the police reports to his complaint and later submitted the letter from the grounds division. Based on the above discussions, Jordan's documentation, although not by affidavit, sufficiently demonstrates triable issues of fact. Therefore, NRCP 56(e) does not provide grounds for summary judgment in this instance. *See Garvey v. Clark County,* 91 Nev. 127, 532 P.2d 269 (1975).

[65]*See Ricord v. C. P. R. R. Co.,* 15 Nev. 167, 180 (1880) (recognizing that, in a malicious prosecution case, the commitment and indictment of a defendant constitutes prima facie evidence that probable cause for criminal prosecution existed but noting that the prima facie evidence could be rebutted with a relevant showing of false testimony or suppressed facts); *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1067 (9th Cir. 2004) (recognizing that "a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes *prima facie*—but not *conclusive*—evidence of probable cause," and stating that a prima facie finding can be rebutted with evidence that "the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith").

State committed malicious prosecution and/or false arrest/false imprisonment, and the district court improperly granted summary judgment on those claims.[66]

### Docket No. 39052 (Luckett)

The final judgment in this matter dismissed Luckett's complaint based on his failure to post security under NRS 18.130. NRS 18.130 permits a defendant in an action instituted by an out-of-state plaintiff to make a demand for security for the costs and charges that the defendant might be awarded.[67] The district court may dismiss the action if the security is not posted within thirty days from the date that the demand's notice is served or from the date of an order for new or additional security.[68] A dismissal for failure to post security will be overturned only upon the finding of an abuse of discretion.[69]

The district court's in forma pauperis order granted Luckett leave to proceed in forma pauperis, "without payment or fees or security therefor." Doumani and the La Concha Motel argue that the district court is not authorized by NRS 12.015 to exempt security requirements upon a finding of indigence.[70] However, because neither NRS 12.015 nor any other statute "clearly and manifestly" removes a district court's inherent power to waive a secu-

---

[66]We note that, to the extent that the State asserts immunity under NRS 41.032, there exist unresolved questions as to whether Officer Jones' acts were made in bad faith and, accordingly, whether the State is entitled to immunity. *Compare Ortega v. Reyna,* 114 Nev. 55, 62, 953 P.2d 18, 23 (1998), *Maturi v. Las Vegas Metro. Police Dep't,* 110 Nev. 307, 871 P.2d 932 (1994), *Carey v. Nevada Gaming Control Bd.,* 279 F.3d 873 (9th Cir. 2002), *and Herrera v. Las Vegas Metropolitan Police Dept.,* 298 F. Supp. 2d 1043, 1054 (D. Nev. 2004), *with Falline v. GNLV Corp.,* 107 Nev. 1004, 1009-10, 823 P.2d 888, 891-92 (1991) (applying the bad-faith exception to insurance-claim processors' discretionary-act immunity), *and Ex Parte City of Montgomery,* 758 So. 2d 565 (Ala. 1999) (recognizing that discretionary official-act immunity does not attach to an officer who acts in bad faith, or willfully or maliciously, since that act would not be considered discretionary); *accord Long v. Seabrook,* 197 S.E.2d 659 (S.C. 1973); *Powell v. Foxall,* 65 S.W.3d 756 (Tex. Civ. App. 2001).

[67]NRS 18.130(1).

[68]NRS 18.130(2), (4); *see also Brion v. Union Plaza,* 104 Nev. 553, 763 P.2d 64 (1988).

[69]*Brion,* 104 Nev. 553, 763 P.2d 64.

[70]NRS 12.015(1)(a)(1) authorizes a district court to, upon determining that a person is unable to pay, "allow the person to commence or defend the action without costs."

rity bond requirement upon a finding of indigence, the district court appropriately waived the security requirement in this case even without express statutory authority.[71] In this instance, language included in the district court's in forma pauperis order effectively excused the security requirement.[72]

Respondents appear to argue that, despite the in forma pauperis order, several subsequent district court oral orders and findings directing Luckett to provide the required security were effective to give Luckett notice that he was nonetheless required to post a bond. The oral orders, however, were never reduced to writing and did not vacate the in forma pauperis order.[73] To the extent that any written orders address the security requirement, the record contains no order expressly vacating the in forma pauperis order and no order was entered at a time early enough in the proceedings to effectively give Luckett any opportunity to respond by posting security.[74] Therefore, the district court abused its discretion when it dismissed Luckett's action based on his failure to post security.

Respondents alternatively claim that the district court properly dismissed the action, because it also granted respondents' motion to dismiss for failure to state a claim. However, although the dis-

[71]*See, e.g., Bank of America Nat. Trust & Sav. Assn. v. Superior Court,* 63 Cal. Rptr. 366, 367 (Ct. App. 1967) (upholding the trial court's decision to waive out-of-state security requirements for an indigent plaintiff under the court's inherent power) (citing *County of Sutter v. Superior Court for Sutter,* 53 Cal. Rptr. 424 (Ct. App. 1966)); *see also Baltayan v. Estate of Getemyan,* 110 Cal. Rptr. 2d 72 (Ct. App. 2001) (Johnson, J., concurring) (discussing the effects of in forma pauperis status on security requirements, especially in light of constitutional equal protection clauses); *Bolden v. City of Shreveport,* 278 So. 2d 138, 144 (La. Ct. App. 1973).

[72]*See Arrambide v. St. Mary's Hosp., Inc.,* 647 F. Supp. 1148 (D. Nev. 1986) (noting that similar language in the federal in forma pauperis statute, authorizing a district court to waive "fees and costs or security therefor," includes NRS 18.130's security requirement).

[73]*See State, Div. Child & Fam. Servs. v. Dist. Ct.,* 120 Nev. 445, 454, 92 P.3d 1239, 1245 (2004) ("'[D]ispositional court orders that are not administrative in nature, but deal with the procedural posture or merits of the underlying controversy, must be written, signed, and filed before they become effective.'"). During the November 20 hearing, the district court indicated that it had previously entered an order directing Luckett to post security. Further, the court indicated that it would request the then-Chief Judge to strike the in forma pauperis order. However, no such written orders appear in the record. *See also* DCR 18(1) (governing when a district judge may act upon a matter already ruled upon by a different judge); *State v. Babayan,* 106 Nev. 155, 165, 787 P.2d 805, 812-13 (1990) (determining that a judge violated DCR 18(1) when making a ruling that conflicted with a different judge's previous ruling in the same case).

[74]See NRS 18.130's thirty-days' notice requirements.

trict court minutes suggest that the court intended to grant the NRCP 12(b)(5) motion, the written order did not mention Luckett's purported failure to state a claim, but instead dismissed the action based solely on Luckett's failure to post security. Consequently, NRCP 12(b)(5) was not a basis for the district court's dismissal order.

Nevertheless, "this court will affirm [an] order of the district court if it reached the correct result, albeit for different reasons."[75] And we held in *Hampe v. Foote*[76] that "[d]ismissal is proper where the allegations are insufficient to establish the elements of a claim for relief." Although we rigorously review the dismissal of an action under NRCP 12(b)(5) for failure to state a claim, and a complaint should only be dismissed if it appears beyond a reasonable doubt that the plaintiff could prove no facts entitling him to relief,[77] Luckett's complaint clearly failed to demonstrate any basis for his requested relief.

Luckett's complaint asserted claims against respondents for (1) the unlawful practice of law, (2) negligence, (3) conspiracy to commit and aid a fraud, and (4) intentional infliction of emotional distress. First, although Nevada has not yet recognized a private cause of action for the unauthorized practice of law, other jurisdictions have recognized such a claim.[78] Luckett's complaint alleges that Doumani "(lied) to me in telling me that he is a (CA) practicing lawyer," and also gave Luckett legal advice concerning a pending Nevada Eighth Judicial District Court case. Luckett did not, however, assert that Doumani is not an attorney or that he falsely claimed to be licensed in Nevada, but only that the California State Bar has no record of Doumani as a California-licensed attorney.

[75]*Rosenstein v. Steele,* 103 Nev. 571, 575, 747 P.2d 230, 233 (1987).

[76]118 Nev. 405, 408, 47 P.3d 438, 439 (2002).

[77]*Id.*

[78]*See, e.g., McMahon v. Advanced Title Services Co.,* 607 S.E.2d 519, 524 (W. Va. 2004) (noting that many jurisdictions recognize a private right of action for the unauthorized practice of law, and holding that "a party who has suffered or may likely suffer a legally cognizable injury, wrong, or other actionable violation of his or her personal legal rights and interests as a proximate result of the unlawful and unauthorized practice of law by another has standing to assert a claim alleging such actual or threatened unlawful and unauthorized practice and seeking relief appropriate to the injury, wrong, or violation"); *see also Paso Builders, Inc. v. Hebard,* 83 Nev. 165, 172, 426 P.2d 731, 736 (1967) (recognizing that whether or not a claim for negligence per se based on the unauthorized practice of law is viable in Nevada was of no import when the conduct complained of did not proximately cause any damage).

And as noted above, he later stated that Doumani is a California-licensed attorney. Further, Luckett did not allege that any legal advice given by Doumani proximately caused, or was likely to cause, any damage to Luckett. In addition, although Luckett asserted that the advice was given on the La Concha Motel's premises, and that the Motel served as a "front . . . for this scam," the Motel could be held liable directly for the unauthorized practice of law only under a theory of respondeat superior, in which case the underlying cause of action must exist.[79] Thus, whether or not Doumani is a licensed attorney, Luckett failed to state a claim for the unlawful practice of law.

Second, a claim for negligence must be based on (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages.[80] However, in *Calloway v. City of Reno*,[81] we held that "under the economic loss doctrine there can be no recovery in tort for purely economic loss." Luckett appears to have based his claim for negligence on the assertion that Doumani allowed M.L. to "scam" Luckett at the motel. But he did not allege that he was physically harmed or injured in any way other than through M.L.'s appropriation of a sum of money. Therefore, even assuming that Doumani and the La Concha Motel had "a reasonable duty to inform [Luckett] that [M.L.] was a scam artist," Luckett has failed to sufficiently state any cause of action for negligence.

Third, we recognize that an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement, *i.e.,* " 'a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another' ";[82] (2) an overt act of fraud in furtherance of

---

[79]*See, e.g., Kornton v. Conrad, Inc.,* 119 Nev. 123, 125, 67 P.3d 316, 317 (2003) ("Generally, the trier of fact determines 'whether an employee was acting within the scope of his or her employment' *when the tortious act occurred.*" (emphasis added) (quoting *Evans v. Southwest Gas,* 108 Nev. 1002, 1005, 842 P.2d 719, 721 (1992))).

[80]*Riley v. OPP IX L.P.,* 112 Nev. 826, 830, 919 P.2d 1071, 1074 (1996) (quoting *Sims v. General Telephone & Electric,* 107 Nev. 516, 521, 815 P.2d 151, 154 (1991), *overruled on other grounds by Tucker v. Action Equip. and Scaffold Co.,* 113 Nev. 1349, 951 P.2d 1027 (1997)).

[81]116 Nev. 250, 267, 993 P.2d 1259, 1270 (2000), *overruled on other grounds by Olson v. Richard,* 120 Nev. 240, 89 P.3d 31 (2004).

[82]*Consolidated Generator v. Cummins Engine,* 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (quoting *Hilton Hotels v. Butch Lewis Productions,* 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993)).

the conspiracy; and (3) resulting damages to the plaintiff.[83] Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud.[84] In Nevada, fraudulent misrepresentation occurs when a false representation is made with knowledge or belief that it is false, or with an insufficient basis of information for making the representation, and with intent to induce the plaintiff to act, and the plaintiff relies on the misrepresentation with resulting damages.[85] Intent must be specifically alleged.[86]

It is unclear from the complaint what representation Luckett believed was fraudulent. The only alleged misrepresentation from which Luckett appears to have claimed actual damages is the purported statement by M.L. that he had a ''hot tip.'' Yet Luckett did not assert that Doumani or the La Concha Motel agreed with M.L. to ''scam him''; he only complained that Doumani knew of M.L.'s ''tendency to scam'' yet let him live at the motel rent-free without warning potential victims. Further, even if Luckett had adequately asserted that Doumani and the La Concha Motel conspired with M.L. regarding the ''hot tip,'' no underlying cause of action for fraud exists; Luckett did not specifically allege that M.L. intended for Luckett to act on the ''hot tip'' or even that M.L. offered to place the wager. Accordingly, Luckett failed to sufficiently state a claim for fraud and, consequently, for conspiracy to defraud.

Finally, to establish a cause of action for intentional infliction of emotional distress, a complaint must allege the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) actual or proximate causation.[87] Again, the plaintiff's complaint must specifically allege intent.[88] In this instance, Luckett failed to allege any of the above elements of intentionally tortious conduct. He merely as-

---

[83]16 Am. Jur. 2d *Conspiracy* § 63 (1998); *see also Flowers v. Carville,* 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003).

[84]*Id.*

[85]*Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 446-47, 956 P.2d 1382, 1386 (1998).

[86]*Tahoe Village Homeowners v. Douglas Co.,* 106 Nev. 660, 663, 799 P.2d 556, 558 (1990) (upholding the dismissal of an intentional tort complaint that failed to allege intent).

[87]*Barmettler,* 114 Nev. at 447, 956 P.2d at 1386.

[88]*See generally Tahoe Village Homeowners,* 106 Nev. at 663, 799 P.2d at 558.

serted that Doumani knew of M.L.'s likely intentions and should have so warned him. He did not claim that Doumani intended for M.L. to ''scam'' him or that he actually suffered any emotional distress as a result. Accordingly, Luckett failed to state a claim for intentional infliction of emotional distress.

While we recognize that the district court abused its discretion in dismissing Luckett's complaint for failure to post security, the complaint clearly failed to state a claim upon which relief could be granted. Accordingly, the complaint's dismissal was warranted.

## CONCLUSION

Nevada courts have at least two viable methods of preventing litigation abuse by proper person litigants with in forma pauperis status: pre-service complaint review and restrictions on court access. Even so, society's right to meaningful court access is significant, and such right should not be lightly constrained. Accordingly, Nevada courts, when considering restricting that right, should follow the guidelines discussed in this opinion.

### Docket No. 38189 (Jordan)

The district court abused its discretion when it granted summary judgment on Jordan's action based on its inability to decipher his claims. Further, while Jordan's claims for perjury, libel, and oppression while using physical force are unsupportable, material facts preclude summary judgment on Jordan's claims for malicious prosecution and false imprisonment/false arrest. Accordingly, we affirm that portion of the district court's judgment pertaining to perjury, libel and oppression while using physical force, and we reverse that portion of the judgment relating to Jordan's claims for malicious prosecution and false imprisonment/false arrest. As the district court also abused its discretion when it entered the restrictive order, broadly prohibiting Jordan from proceeding in forma pauperis in any future actions and requiring him to obtain leave of the court before filing any new actions, we direct the district court to vacate its restrictive order on remand. Any subsequent restrictive order must comply with the guidelines discussed in this opinion.[89]

### Docket No. 39052 (Luckett)

Although the district court abused its discretion when it dismissed Luckett's action for his failure to post security, Luckett's

---

[89]Although Jordan was not granted leave to file papers in proper person, see NRAP 46(b), we have considered the proper person documents received from Jordan. In light of this opinion, we deny his proper person requests as moot. Jordan's request to remand this matter to a different department is denied.

complaint nevertheless fails to state an actionable claim. Accordingly, we affirm the district court's order dismissing Luckett's complaint. In addition, we conclude that the vexatious litigant order restricting Luckett's access to the court was warranted by the circumstances of this case. The district court's restrictive order, however, lacks a complaint-review standard and improperly attempts to apply to all Nevada courts. Accordingly, we remand this matter to the district court with instructions that it modify its restrictive order in accordance with this opinion.[90]

_____

[90]Although Luckett was not granted leave to file papers in proper person, *see* NRAP 46(b), we have considered the proper person documents received from Luckett. In light of this opinion, we deny his proper person motions as moot.