Aleta Rose GOODWIN, Robert Paul McArtor, and Heather Gabel, individually and on behalf of a class of similarly situated individuals; Joseph Jones, Meisa Jones, Michael R. Tierney and Fredrick Tulip, individually and on behalf of a class of similarly situated individuals; Linda R. Barba; Cynthia and Charles Flagg; Janice Gannon; William Dan Kluttz; Brian E. Jones; James H. Mullennix and Jeanne K. Mullenix; Heather Monahan and George R. Moreno; Travis Rawlings and Sylvia Rawlings; John Sullivan and Debbie Sullivan; Joseph E. Thurston and Arlene Thurston; Jesus Tovar; John F. Wilburn; and Rosalie W. Wilburn, Plaintiffs,

v.

EXECUTIVE TRUSTEE SERVICES, LLC; Countrywide Home Loans, Inc., a New York corporation; Merscorp, Inc. a Virginia corporation; Mortgage Electronic Registration Systems, Inc., a subsidiary of Merscorp, Inc. a Delaware Corporation; Recontrust Company; Saxon Mortgage Inc.; T.D. Service Company; Deutsche Bank National Trust Company; Ocwen Loan Servicing, LLC; Western Progressive, LLC; AHMSI Default Services, Inc.; Quality Loan Service Corporation; National Default Servicing Corporation; Aztec Foreclosure Corporation; Federal Home Loan Mortgage Corporation, a Virginia corporation; Federal National Mortgage Association, a District of Columbia corporation; GMAC Mortgage, L.L.C., a Delaware corporation; National City Mortgage, a foreign company and a division of National City Bank, a subsidiary of National City Corporation; National City Corporation, a Delaware corporation and a subsidiary of PNC Financial Services, Inc.; PNC Financial Services, Inc., a Pennsylvania corporation; J.P. Morgan Chase Bank, N.A., a New York corporation; Citimortgage, Inc., a New York corporation; HSBC Mortgage Corporation, U.S.A., a Delaware corporation; AIG United Guaranty Corporation, a foreign corporation; Wells Fargo Bank, N.A., a California corporation, dba Wells Fargo Home Equity and dba Wells Fargo Home Mortgage division of Wells Fargo Bank, N.A., a California corporation; Bank of America, N.A., a Delaware corporation; and GE Money Bank, an Ohio corporation, Defendants.

No. 3:09–CV–306–ECR–PAL.

United States District Court, D. Nevada.

Jan. 8, 2010.

Valerie R. Edwards, Koeller, Nebeker, Carlson & Haluck, LLP, Phoenix, AZ, Megan K. Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV, Robert R. Hager, Treva J. Hearne, Hager & Hearne, Reno, NV, for Plaintiffs.

Bruce T. Beesley, Paul A. Matteoni, Laury M. MaCauley, Lewis and Roca, LLP, Ryan W. Herrick, John Desmond, Jones Vargas, Michael R. Kealy, Parsons Behle & Latimer, Courtney Miller O'Mara, Leslie Bryan Hart, Richard H. Bryan, Lionel Sawyer & Collins, Michael E. Sullivan, Robison Belaustegui Sharp & Low, Ann O. Hall, John Ohlson, Bowen, Hall, Ohlson & Osborne Chartered, Reno, NV, Henry F. Reichner, Ira S. Lefton, Reed Smith LLP, David H. Pittinsky, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, Thomas M. Hefferon, Goodwin Procter LLP, Brian P. Brooks, Omelveny & Myers LLP, Andrew R. Louis, Matthew Previn, Buckleysandler LLP, Washington, DC, Ariel E. Stern, Jacob D. Bundick, Ballard Spahr Andrews & Ingersoll, LLP, Patrick G. Byrne, Erica J. Stutman, Cynthia Alexander, Chad R. Fears, Snell & Wilmer, Colt B. Dodrill, Wolfe Wyman, LLC, Gregory L. Wilde, Wilde & Associates, Joshua M. Dickey, Dennis L. Kennedy, Bailey Kennedy, Kristin A. Schuler–Hintz, McCarthy & Holthus, LLP, Dana Jonathon Nitz, Olson, Cannon, Gormley & Desruisseaux, Donna M. Osborn, Wright Finlay & Zak, LLP, Christopher H. Byrd, Fennemore Craig, Las Vegas, NV, Robert M. Brochin, Morgan, Lewis & Bockius LLP, Miami, FL, Matthew McClendon, Locke Lord Bissell & Liddell LLP, Los Angeles, CA, Jami Wintz McKeon, Jeremy S. Gladstone, Morgan Lewis & Bockius LLP, Ashley H. Chalmers, Elizabeth Lemond McKeen, Randall W. Edwards, O'Melveny & Myers, LLP, San Francisco, CA, Howard S. Lindenberg, Freddie Mac, McLean, VA, Mark S. Landman, Landman Corsi Ballaine & Ford, P.C., New York, NY, Jill L. Murch, Jonathan W. Garlough, William J. McKenna, Foley & Lardner LLP, Danielle J. Szukala, Leann Pedersen Pope, Burke Warren MacKay & Serritella, PC, Lucia Nale, Thomas V. Panoff, Mayer Brown LLP, J. Matthew Goodin, P. Russell Perdew, Thomas J. Cunningham, Locke Lord Bissell & Liddell LLP, Chicago, IL, David Hall, Parsons Behle & Latimer, Salt Lake City, UT, Gregory J. Marshall, Snell & Wilmer L.L.P., Todd S. Kartchner, Fennemore Craig, P.C., Phoenix, AZ, Brian M. Forbes, Gregory N. Blase, Robert B. Allensworth, K & L Gates LLP, Boston, MA, Gary E. Schnitzer, Kravitz Schnitzer Sloane Johnson & Eberhardy, Chtd., Henderson, NV, for Defendants.

### *Order*

EDWARD C. REED, JR., District Judge.

This is a putative class action brought by numerous homeowners who are in danger of losing or have already lost their homes to foreclosure. Plaintiffs assert seven claims for relief: (1) violation of the Fair Housing Act; (2) violation of Nevada Uniform Lending Practices Act; (3) conspiracy to commit fraud and conversion; (4) conspiracy to commit fraud related to the MERS system; (5) unjust enrichment; (6) intentional infliction of emotional distress; and (7) fraud in the inducement.

Before the Court are twenty two motions to dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 165[1], 166, 167, 173, 198, 200, 202, 227 243, 342, 344 and 356). Plaintiffs oppose each motion separately. Defendants have replied. Also before the Court are Plaintiffs' motion for a preliminary injunction (# 98), Plaintiffs' motion to certify class (# 99), and Defendants' motion for protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction (# 142). The motions are ripe, and we now rule on them.

## I. Factual and Procedural History

Plaintiffs in this case are homeowners who are in danger of losing or have already lost their homes to foreclosure. Plaintiffs filed a class action complaint (# 1) and motion for preliminary injunction (# 2) on June 9, 2009. On June 10, 2009, we granted (# 5) Plaintiffs' motion for preliminary injunction to the extent it sought a temporary restraining order. We restrained Defendants from pursuing any foreclosure actions against Plaintiffs or their properties. The temporary restraining order remained in effect until June 22, 2009. On June 11, 2009, we amended (# 10) the temporary restraining order. On June 22, 2009, we denied Plaintiffs' motion for preliminary injunction (# 2) as moot in light of a stipulation of the parties (# 26) and an Order (# 28) of the Court approving the stipulation.

On June 24, 2009, Plaintiffs filed an amended complaint (# 47). On June 29, 2009, Plaintiffs filed a motion (# 59) for temporary restraining order and preliminary injunction. We granted (# 67) the motion (# 59) to the extent it sought a temporary restraining order. The temporary restraining order remained in effect until July 16, 2009. On July 15, 2009, certain Defendants stipulated (# 110) that they would not initiate or advance any foreclosures with respect to certain properties at issue in this case pending a trial on the merits. On the same date we entered an Order (# 111) approving parts of the stipulation (# 110) and disapproving others. On July 16, 2009, another stipulation (# 118) was entered into between certain Defendants and certain Plaintiffs. On July 16, 2009, we held a hearing clarifying our previous Order (# 111). (Mins.(# 123).)

On July 11, 2009, Plaintiffs filed a motion (# 98) for preliminary injunction and a motion (# 99) to certify class. Defendants opposed both motions and Plaintiffs replied. On July 29, 2009, Defendants Federal Home Loan Mortgage Corporation and Federal National Mortgage Association filed (# 142) a motion for "Protective Order Staying Discovery and Staying Their Oppositions to Plaintiffs' Motions for Class Certification and Preliminary Injunction and Joinder to Certain Defendants' Joint Motion to Temporarily Stay Proceedings." The motion (# 142) is unopposed. Between July 29, 2009, and December 3, 2009, Defendants filed numerous motions to dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 165, 166, 167, 173, 198, 200, 202, 227, 243, 342, 344 and 356). Plaintiffs opposed the motions, and Defendants replied.

---

**1.** On July 30, 2009, Defendant Taylor, Bean & Whitaker Mortgage Corp. ("TB & W") filed a motion to dismiss (# 165). On August 24, 2009, TB & W filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Case No. 3:09–bk– 07047–JAF. Pursuant to 11 U.S.C. § 362, the commencement of TB & W's bankruptcy case operates as an automatic stay of all actions or proceedings, including this action, against TB & W. (See Notice of Bankruptcy (# 228).) In light of the automatic stay, this Order does not rule on TW & W's motion (# 165) to dismiss.

## II. Motion to Dismiss Standard

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Cir.1996) (citation omitted).

■ Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Stac Elecs.,* 89 F.3d at 1403 (citation omitted).

■ Review on a motion pursuant to Fed.R.Civ.P. 12(b)(6) is normally limited to the complaint itself. *See Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed.R.Civ.P. 12(d); *see United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of ju-dicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie,* 342 F.3d at 908.

■ If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Lee,* 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie,* 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed.R.Evid. 201, a court may judicially notice them in deciding a motion to dismiss. *Id.* at 909; *see* Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

## III. Analysis

### A. Fair Housing Act

The first cause of action alleged in Plaintiffs' first amended complaint pertains only to Plaintiff Aleta Rose Goodwin ("Goodwin"). The complaint alleges that Defendants targeted Goodwin, "an unmarried African American woman," because of her "race and/or national origin and gender," and offered Goodwin a "less-than-favorable loan than would have been offered to a white borrower or a male borrower, all other things being equal." (Am. Compl. ¶¶ 148, 151, 152(# 47).)

The Fair Housing Act ("FHA") prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection there-

with, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The FHA has a two year statute of limitations. *Id.* § 3613(a)(1)(A).

■ Goodwin's FHA claim is untimely. The conduct giving rise to her claim is the issuance of a "less-than-favorable loan." (Am. Compl. ¶ 152(# 47).) The loan in question was issued on November 29, 2006, when Goodwin executed her deed of trust. (*Id.* ¶ 103(# 47).) The statute of limitations thus began running on that date and expired on November 29, 2008. Plaintiff did not file her complaint until June 9, 2009. Even if we assume that Defendants' actions violated the FHA, because Goodwin filed this action under FHA more than two years after the alleged discriminatory acts, Goodwin's FHA claim is time-barred.

■ Goodwin's allegation that Defendants engaged in a "continuing violation whereby each Defendant has engaged in a pattern or extended practice of exploiting the market of Hispanics, the disabled and women" (*Id.* ¶ 155(# 47)) does not cure the untimeliness of Goodwin's claim. Under the continuing violation theory, when "a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period] of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380–81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The continuing violation theory is not applicable here because Goodwin claims to have suffered only a single incident of conduct violative of the Act, namely the "less-than-favorable loan." Moreover, Goodwin's allegation regarding the patterns and practices of all Defendants is a mere legal conclusion unsupported by any factual allegations and, as such, is not a plausible claim for a continuing violation.

*See In re Stac Elecs.,* 89 F.3d at 1403 (citation omitted). Plaintiffs' first cause of action thus fails to state a claim and will be dismissed.

### B.   Unfair Lending Practices

Plaintiffs allege that all Defendants violated Nev.Rev.Stat. § 598D.100 by continuing "to enforce mortgages secured by Plaintiffs' homes that included no evaluation of any commercially reasonable means or mechanisms that would demonstrate the Plaintiffs' capacity to repay...." (Am. Compl. ¶ 162(# 47).) Defendants have moved to dismiss this claim on various grounds. Some argue that they are not lenders and thus they do not fall within the purview of the statute. Others argue that the claim is too vague and conclusory to survive a motion to dismiss. Still others argue that the version of the statute that Plaintiffs allege they violated was not in force until October 1, 2007, and there is no provision for its retroactive application. Thus, these provisions cannot apply to those Plaintiffs' loans, which were obtained before that date.

#### 1.   2007 Amendments

■ The Nevada Legislature adopted Assembly Bill 440 during the 2007 session, which amended Nev.Rev.Stat. Chapter 598D, effective October 1, 2007. The bill, inter alia, redefined the scope of "home loan[s]" subject to the chapter's provisions. *See* A.B. 440, Section 2, 2007 Nev. Stat. 2846 ("AB 440"). The definition of "home loan" in the pre-amendment version of Nev.Rev.Stat. § 598D.040 was as follows:

> "Home loan" means a consumer credit transaction that 1. Is secured by a mortgage loan which involves real property located within this State; and 2. Constitutes a mortgage under § 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted by the Board of Governors of the Federal Reserve Sys-

tem pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

Nᴇᴠ.Rᴇᴠ.Sᴛᴀᴛ. § 598D.040 (2006).

The 2007 legislation redefined the operative term "home loan," inserting a second "without limitation" before the clause about the Home Ownership and Equity Protection Act ("HOEPA"):

> "Home loan" means a consumer credit transaction that is secured by a mortgage loan which involves real property located within this State and includes, without limitation, a consumer credit transaction that constitutes a mortgage under § 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted by the Board of Governors of the Federal Reserve System pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

Nᴇᴠ.Rᴇᴠ.Sᴛᴀᴛ. § 598D.040 (2008)

In other words, the pre-amendment version of Nev.Rev.Stat. Chapter 598D regulated only those home loans subject to regulation under HOEPA. The Federal Reserve has described HOEPA regulated loans as

> closed-end, non-purchase money mortgages secured by a consumer's principal dwelling (other than a reverse mortgage) where either: (a) The APR at consummation will exceed the yield on Treasury securities of comparable maturity by more than 8 percentage points for first-lien loans, or 10 percentage points for subordinate-lien loans; or (b) the total points and fees payable by the consumer at or before closing exceed the

greater of 8 percent of the total loan amount, or $547 for 2007 (adjusted annually).

Truth in Lending; Final Rule, 73 Fed.Reg. 44522, 44527, n. 20 (Jul. 30, 2008). *See also* 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32. The post-amendment version is more expansive, effectively covering any home loan for property located in Nevada.

■■■ Section 598D as amended lacks any provision for its retroactive application, and civil statutes are normally presumed to operate only prospectively. *United States v. Perry,* 431 F.2d 1020, 1023 (9th Cir.1970). The broader post-amendment language is therefore only applicable to loans issued after October 1, 2007.

The Complaint thus fails to state a claim under the Unfair Lending Act as to Plaintiffs who obtained their loans before October 1, 2007,[2] because the Complaint does not allege that any Plaintiff obtained a "home loan" within the pre-amendment definition of Nev.Rev.Stat. § 598D.040.

Moreover, the Complaint does not allege conduct that would have constituted an unfair lending practice prior to October 1, 2007. Before October 1, 2007, Nev.Rev. Stat. § 598D.100(1)(b) stated that "[i]t is an unfair lending practice for a lender to ... [k]nowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income." Nᴇᴠ.Rᴇᴠ.Sᴛᴀᴛ. § 598D.100(1)(b)(2006).[3] Plaintiffs' Com-

---

**2.** The only Plaintiffs who obtained home loans after October 1, 2007, are Joseph Arevalo, Victor Parece, Matthew Robert Robinson and Tonya Dawn Robinson. The remaining Plaintiffs obtained home loans before October 1, 2007.

**3.** In its current form, Nev.Rev.Stat. § 598D.100 states that it "is an unfair lending

practice for a lender to ... [k]nowingly or intentionally make a home loan, other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no-document home loan or stated-document home loan, without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to

plaint lacks any allegations that Defendants extended credit to any Plaintiff based solely upon the equity in the property. Thus, Plaintiffs fail to properly plead the elements of unfair lending practices based upon the pre-October 2007 version of the statute.

Because the Complaint fails to allege conduct that would have constituted an unfair lending practice prior to October 1, 2007, and fails to allege that any Plaintiff obtained a "home loan" within the pre-amendment definition of Nev.Rev.Stat. Chapter 598D, dismissal of the unfair lending claim as to Plaintiffs who obtained their home loans prior to October 1, 2007 is appropriate.

### 2. Vagueness

■ The Complaint's unfair lending practices claim also fails with respect to the Plaintiffs who obtained home loans subsequent to October 1, 2007. Plaintiffs' second cause of action is simply too vague to survive a motion to dismiss. Plaintiffs assert the unfair lending practices claim against all Defendants, alleging that they collectively "enforced" mortgages that "included no evaluation of any commercially reasonable means or mechanism that would demonstrate the Plaintiffs' capacity to repay...." (Am. Compl. ¶ 162(# 47).) Nev.Rev.Stat. § 598D.100 proscribes certain lending practices; it does not regulate the enforcement of loans. Indeed, the statute applies only to lenders. NEV.REV. STAT. § 598D.100. "Lender" is defined as "a mortgagee, beneficiary of a deed of trust or other creditor who holds a mortgage, deed of trust or other instrument that encumbers home property as security for the repayment of a home loan." *Id.* § 598D.050. We cannot ascertain from the broad and sweeping allegations in the Complaint which of the many named Defendants qualify as lenders within the

meaning of the statute. Claims that fail to identify which defendant is responsible for what alleged injury do not adequately place defendants on notice of the claim or claims being asserted against them. *See Fortaleza v. PNC Fin. Servs. Group, Inc.,* 642 F.Supp.2d 1012, 1022 (N.D.Cal.2009).

The assertion of this claim against all Defendants has caused a great deal of confusion. Many non-lender Defendants have expended resources filing motions to dismiss on that ground. Plaintiffs, unable to defend this claim as to many of these Defendants, have already withdrawn the claim with respect to National Default Servicing Corp., Aztec Foreclosure Corporation, AHMSI Default Services, Inc., MTC Financial Inc. dba Trustee Corps., Citimortgage, Inc., GMAC Mortgage, LLC, and Executive Trustee Services, (LLC. P.'s Opp. at 5 (# 210).); (P.'s Opp. at 8–9 (# 214)); (P.'s Opp. at 11 (# 222)). While it is helpful that Plaintiffs have withdrawn the claim as to some Defendants, it is nonetheless inappropriate to allege a claim broadly against all Defendants without a legal basis for doing so.

Finally, the Complaint alleges that certain Plaintiffs were "qualified by their various lenders only on the basis of credit score and collateral market value or stated income that was not verified." (Am. Compl. ¶ 162(# 47).) This allegation falls short of establishing an identifiable claim not only because it fails to identify which lenders engaged in this conduct, but also because it does not identify how each lender at issue calculated or assessed each Plaintiff's ability to repay. Plaintiffs' second claim for relief thus fails to state a claim and will be dismissed.

### C. Conspiracy to Commit Fraud and Conversion

■ Plaintiffs' third claim for relief alleges that various Defendants engaged in

repay the home loan." NEV.REV.STAT. § 598D.100(1)(b)(2008).

a conspiracy to "deprive Plaintiffs of their property through fraud and misrepresentation that would result in Plaintiffs entering into loan agreements for which they were ultimately not qualified and which would eventually result in Plaintiffs' inability to make payments and stay in their homes." (Am. Compl. ¶ 168(# 47).) Under Nevada law, an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety*, 121 Nev. 44, 110 P.3d 30, 51 (2005). "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.* A showing of fraud, in turn, requires (1) a false representation, (2) knowledge or belief that the representation was false, (3) intent to induce reliance on the representation, (4) that the reliance must be justifiable, and (5) damages. *Lubbe v. Barba*, 91 Nev. 596, 540 P.2d 115, 117 (1975).

■■■ A claim for conspiracy to commit fraud must be pled with the same particularly as the fraud itself. *See Wanetick v. Mel's of Modesto, Inc.*, 811 F.Supp. 1402, 1406 n. 3 (N.D.Cal.1992) (so stating). Thus, under Rule 9(b), a party must state with particularity the circumstances constituting the conspiracy. *See* FED.R.CIV.P. 9(b). Allegations of conspiracy must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (so stating, with respect to fraud) (internal quotation marks omitted). Thus, to state a claim for conspiracy "a plaintiff must

allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Sw. Gas Corp.*, 165 F.Supp.2d 1010, 1020–21 (D.Ariz.2001) (internal citations and quotation marks omitted).

■■■ Plaintiffs have failed to plead the alleged conspiracy to commit fraud with particularity. Plaintiffs have not stated how or even when the alleged conspiracy was formed. Plaintiffs have not included any factual allegations pertaining to how Defendants targeted Plaintiffs. In addition, the Complaint lumps multiple Defendants together without differentiating between them or the allegations against them. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007) (noting that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together"). Such general allegations are insufficient because "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir.2008).

With regard to the underlying fraud, the complaint fails to specify what false representations underlie the claim. Plaintiffs' reference to "representations … related to Plaintiffs' ability to repay the loan or to refinance the loan in taking the loan and signing the documents," (Am. Compl. ¶ 170(# 47)) is insufficient under Rule 9(b).[4]

---

4. We do not have authority to rule on claims or issues related to the formation and/or operation of the MERS system. Pursuant to a transfer order issued by the United States Judicial Panel on Multidistrict Litigation, the claims in this case that are related to the formation and/or operation of the MERS system are under the jurisdiction of the District of Arizona and assigned to the Honorable James A. Teilborg for coordinated or consoli-

Finally, it should be noted that the title of Plaintiffs' third claim for relief is "Conspiracy to Commit Fraud and Conversion." (Am. Compl. at 49(# 47).) The substance of this claim's allegations focuses on the fraud underlying the alleged conspiracy, not conversion. Nonetheless, to the extent the claim is also premised on the underlying tort of conversion, Plaintiffs likewise fail to state a claim. Conversion, under Nevada law, "is a distinct act of dominion wrongfully exerted over personal property." *Edwards v. Emperor's Garden Restaurant*, 122 Nev. 317, 130 P.3d 1280, 1287 (2006). In this case, Plaintiffs are alleging that Defendants conspired to "unlawfully deprive plaintiffs of their homes." (Am. Compl. ¶ 175(# 47).) Thus, the subject of the alleged conversion is real property, not personal property. Therefore, to the extent the conspiracy claim is premised on the underlying tort of conversion, Plaintiffs fail to state a claim. Plaintiffs' third claim for relief will be dismissed.

### D. Conspiracy to Commit Fraud Related to the MERS system

Plaintiffs' fourth claim for relief alleges a conspiracy to commit fraud related to the MERS system. Pursuant to a transfer order issued by the United States Judicial Panel on Multidistrict Litigation, the claims in this case that are related to the formation and/or operation of the MERS system are under the jurisdiction of the District of Arizona and assigned to the Honorable James A. Teilborg for coordinated or consolidated pretrial proceedings. (*In Re: Mortgage Electronic Registration Systems (MERS) Litigation*, MDL No. 2119, Transfer Order (# 412).) Thus, we will not rule on the pending motions to dismiss with regard to Plaintiffs' fourth claim for relief alleging conspiracy to commit fraud related to the MERS system.

### E. Unjust Enrichment

Plaintiffs' fifth claim for relief alleges unjust enrichment against all Defendants. Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another." *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 113 Nev. 747, 942 P.2d 182, 187 (1997). An action "based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* The doctrine of unjust enrichment thus only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.* (quoting 66 Am. Jur.2d Restitution § 11 (1973)).

The basic premise of Plaintiffs' claim for unjust enrichment is that they were "targeted for and lured" into their mortgages. (Am. Compl. ¶ 214(# 47).) These mortgages are express and written contracts; Plaintiffs' fifth claim thus fails and will be dismissed.

### F. Intentional Infliction of Emotional Distress

Plaintiffs' sixth cause of action alleges intentional infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are "(1) extreme and outrageous

dated pretrial proceedings. (*In Re: Mortgage Electronic Registration Systems (MERS) Litigation*, MDL No. 2119, Transfer Order (# 412).) It is not entirely clear whether the claims discussed here fall within this definition, in part because of the lack of specificity we have already described. This Order is not intended to refer to or rule upon any issues which are included in the MDL transfer order.

conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith,* 115 Nev. 372, 989 P.2d 882, 886 (1999). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car,* 114 Nev. 1, 953 P.2d 24, 26 (1998) (internal quotation marks and citation omitted). "Severe or extreme emotional distress" is distress "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.,* 819 F.Supp. 905, 911 (D.Nev.1993). A claim for intentional infliction of emotional distress operates on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress. *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459, 462 (1993)

■ Neither the actions allegedly carried out by Defendants nor the distress allegedly suffered by Plaintiffs is sufficient to state a claim for intentional infliction of emotional distress. The alleged actions underlying this claim are, inter alia, misrepresentation of the loans at issue, negotiation of those loans and the closing of the loans. Plaintiffs argue that Defendants actions are extreme and outrageous because Plaintiffs were particularly vulnerable to predatory lending practices and the loans at issue concerned Plaintiffs' residences. Neither of these circumstances, even if true, transforms the alleged conduct into conduct that is "utterly intolerable in a civilized community." *Maduike,* 953 P.2d at 26. Moreover, the only physical symptoms of distress allegedly suffered by Plaintiffs are sleeplessness and headaches. (Am. Compl. ¶ 225 # 47). This distress is not so severe that "no reasonable person

could be expected to endure it." *Alam,* 819 F.Supp. at 911. Plaintiffs' claim for intentional infliction of emotional distress thus fails to state a claim.

### G. Fraud in the Inducement

■ Plaintiffs' seventh claim for relief is for fraud in the inducement. Like Plaintiffs' claim for conspiracy to commit fraud and conversion, this claim fails to satisfy the particularity requirements of Rule 9(b). Federal Rule of Civil Procedure 9(b) requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." FED. R.CIV.P. 9(b). Rule 9(b) "requires ... an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations," *Swartz,* 476 F.3d at 764 (internal quotation marks and citation omitted). In a case with multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65 (internal quotation marks and citation omitted), Plaintiffs' claim for fraud in the inducement fails to allege who made what misrepresentations or when any of the alleged misrepresentation took place. The claim is replete with vague and conclusory allegations such as "Defendants misrepresented the ability of Plaintiffs, and other similarly situated, to qualify for the loans." (Am. Compl. ¶ 230(# 47).)

To the extent that Plaintiffs' fraud in the inducement claim is based on omissions by Defendants the complaint also fails to state a claim. Under Nevada law, one of the five essential elements of a claim for fraudulent concealment is that the "defendant

must have been under a duty to disclose the fact to the plaintiff." *Nev. Power Co. v. Monsanto Co.*, 891 F.Supp. 1406, 1415 (D.Nev.1995). Plaintiffs do not allege what duties, if any, the various Defendants named in the Complaint owed Plaintiffs. Plaintiffs' claim for fraud in the inducement thus fails.

### IV. Leave to Amend

■ Under Rule 15(a) leave to amend is to be "freely given when justice so requires." FED.R.CIV.P. 15(a). In general, amendment should be allowed with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)). If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amendment are present, leave to amend may properly be denied in the district court's discretion. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir.2003) (discussing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

In light of the liberal spirit of Rule 15(a), Plaintiffs should have an opportunity to amend their complaint. There is no reason why Plaintiffs could not cure the deficiencies we have noted here, or at least some of them, such as the conclusory and vague allegations against undifferentiated defendants. If the amended complaint is similarly deficient, however, we may be forced to conclude that leave to further amend would be futile.

### V. Motion for Preliminary Injunction, Motion to Certify Class and Motion for Protective Order

In light of this Order dismissing all of Plaintiffs' claims on which we have authority to rule under the MDL Order, Plaintiffs' motions for class certification (# 99) and a preliminary injunction (# 98) are moot, as is Defendants' motion (# 142) for a protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction. These motions will therefore be denied as moot.

Our dismissal of Plaintiffs' motion for class certification (# 99) does not conflict with the Ninth Circuit's recent decision in *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union, AFL–CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010). In that case, the Ninth Circuit held that a district court abused its discretion when it assumed, for the purpose of Federal Rule of Civil Procedure 23 certification analysis and without any separate inquiry into the merits, that plaintiffs' legal theory would fail. *Id.* at 803–04. Unlike the posture in *United Steel,* here, in addition to a motion for class certification, a number of motions to dismiss are before the Court. Our inquiry into the merits of Plaintiffs' claims was conducted solely with respect to the pending motions to dismiss. Our ultimate conclusion with respect to those motions renders Plaintiffs' motion for class certification moot. In light of the circumstances of this action, it is therefore appropriate for this Court to enter an Order dismissing the non-MDL claims without first ruling on the motion for class certification.

### VI. Conclusion

Plaintiffs have failed to state a claim upon which relief can be granted. The Complaint, to the extent it does not involve claims assigned to the District of Arizona pursuant to the MDL order, will be dismissed. Plaintiffs will be given leave to amend. Should they choose to do so, however, they shall specify which allegations apply to which Defendants and which Plaintiffs. Plaintiffs' motions for class certification (# 99) and a preliminary injunction (# 98) and Defendants' motion (# 142) for a protective order staying discovery

1258

and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction are moot and will be denied on that basis.

*IT IS, THEREFORE, HEREBY OR-DERED THAT* Defendants' Motions to Dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 166, 167, 173, 198, 200, 202, 243, 342, 344 and 356) are *GRANTED* on the following basis: We lack jurisdiction over Plaintiffs' claims that were transferred to the MDL; we thus do not rule on the motions to the extent they address Plaintiffs' claims related to the formation and/or operation of the MERS system. The motions are granted with respect to Plaintiffs' remaining claims for relief. Plaintiff shall have 21 days within which to file an amended complaint addressing the deficiencies discussed here. It is not within our authority to grant Plaintiffs' leave to amend with respect to claims before the MDL.

*IT IS FURTHER ORDERED THAT* Plaintiffs' Motion for Preliminary Injunction (# 98) is *DENIED* as moot.

*IT IS FURTHER ORDERED THAT* Plaintiffs' Motion to Certify Class (# 99) is *DENIED* as moot.

*IT IS FURTHER ORDERED THAT* Defendants' motion (# 142) for "Protective Order Staying Discovery and Staying Their Oppositions to Plaintiff's Motions for Class Certification and Preliminary Injunction and Joinder to Certain Defendants' Joint Motion to Temporarily Stay Proceedings" is *DENIED* as moot.